1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6 EUREKA DIVISION

7

| | |
|---|---|
| 8 DEBRA AVENMARG, | Case No. 19-cv-05891-RMI |
| 9     Plaintiff, | |
| 10     v. | **ORDER ON DEFENDANT HUMBOLDT COUNTY'S SECOND MOTION TO DISMISS** |
| 11 HUMBOLDT COUNTY, et al., | |
| 12     Defendants. | Re: Dkt. No. 61 |

13

14     Now pending before the court is a Motion to Dismiss (dkt. 61) filed by Defendant

15 Humboldt County seeking dismissal from Plaintiff's Second Amended Complaint ("SAC") (dkt.

16 57-1, 57-2 *SEALED*)[1] without further leave to amend. Plaintiff has responded (dkt. 63), and the

17 County has replied (dkt. 66). For the reasons stated below, Defendant County's motion is granted.

18                      **BACKGROUND**

19     Plaintiff's First Amended Complaint (dkts. 42, 43 *SEALED*)[2] ("FAC") contained

20 allegations that Defendant County and Blanck violated her right to privacy under the Fourteenth

21 Amendment, right to familial association under the First and Fourteenth Amendments, right to

22 petition under the First Amendment, and asserted several state law claims including invasion of

23 privacy, defamation, contract interference, whistleblower retaliation, and negligent and intentional

24 infliction of emotional distress. FAC (dkt. 42). Defendants moved to dismiss the FAC on several

25 _____

26 [1] The public, redacted version of the SAC is available at docket number 57-1, and the unredacted, sealed version is available at docket number 57-2. The pagination is the same for both documents. Hereinafter, the

27 court will refer to the public version.

28 [2] The public, redacted version of Plaintiff's FAC is available at docket number 42, and the unredacted, sealed version is docket number 43.

United States District Court
Northern District of California

grounds including: failure to establish municipal liability; failure to allege a constitutionally protected relationship; Claims 1 and 2 were duplicative of Claims 4 and 5; failure to allege protected speech; immunity for the motions to disqualify Plaintiff; and, separately Defendant Blanck argued that Cal. Civ. Code § 1102.5 does not provide for individual liability. *See* Defs.' Mot. (dkt. 44); *see also* Blanck's Mot. (dkt. 46).

In the Order (dkt. 55) on the previous motion to dismiss, the court granted Plaintiff leave to amend several claims. First, the court instructed Plaintiff to add facts sufficient to establish municipal liability against the County for Claims 1, 2, 4, and 5. *Id.* at 15. Specifically, Plaintiff needed to add facts alleging the existence of local or state laws that granted final policy making authority to Defendant Blanck, that a final policymaker ratified or approved Defendant Blanck's conduct, and to clarify what role Defendant Blanck played in regard to the policy – whether he created it, implemented or approved it, or that he acted because of it. *Id.* Claim-2 was dismissed with leave to amend so that Plaintiff could allege facts showing that Defendants' motions to disqualify were not entitled to immunity as petitioning under the First Amendment. *Id.* at 20-21. The court also granted leave to amend Claim-3 so that Plaintiff could add facts showing that her motions in GN's dependency proceeding constituted speech on a public matter protected by the First Amendment. *Id.* at 19. Plaintiff was also given leave to amend Claim-6 to add allegations that Plaintiff engaged in protected whistleblower activities and to allege specific retaliatory conduct by Defendants. *Id.* at 22. Finally, the court granted Plaintiff leave to amend Claim-8 so that Plaintiff could identify with particularity what speech she alleges to be defamatory. *Id.* Without amendment, claims 1, 2, 4, and 5 remained operative against Defendant Blanck as well as the unchallenged state law claims.

*Plaintiff's Claims*:

In the SAC, which is the subject of the pending motion to dismiss, Plaintiff brings twelve claims against Defendants. Claim-1 asserts that Defendants violated Plaintiff's right to privacy in decision making on a private matter. Specifically, Plaintiff alleges that Defendants interfered with her decision to be involved in the life of GN – her former foster child and extended family member. *See* SAC (dkt. 57-1) at 24. Plaintiff bases this claim on the following conduct: Defendant

Blanck falsely accused her of violating her ethical duties as an attorney due to an alleged conflict of interest; Defendant Blanck told Plaintiff to choose between her employment or rescinding her motions to obtain *de facto* parent status in GN's dependency case; and Defendant Blanck fired Plaintiff when she refused to quit or rescind her motions. *Id*. at 24-26. In Claim-2, Plaintiff alleges that Defendants invaded her right to privacy under the Fourteenth Amendment by requiring her to disclose personal matters. *Id*. at 26-29. In particular, Defendants required Plaintiff to disclose information about her family, GN, and her employment in the following contexts: during her employment with the County; when obtaining new employment; when defending against the motions to disqualify; and when defending against Defendant Blanck's complaint to the California state bar. *Id*. at 27. Claim-3 asserts that Defendants retaliated against Plaintiff for engaging in constitutionally protected activity (petitioning in GN's dependency case) in violation of the Due Process Clause of the Fourteenth Amendment. *Id*. at 29-31. Plaintiff alleges that Defendants retaliated against her by: wrongfully terminating her employment for filing motions in GN's dependency case, filing motions to disqualify her from cases in her new employment, and Defendant Blanck's complaint to the state bar. *Id*. at 30. Claim-4 alleges that Defendants interfered with Plaintiff's First Amendment right to petition courts for redress of grievances (her motions in GN's dependency case) and retaliated against her for her petitioning. *Id*. at 32-34. Plaintiff's Fifth Claim asserts that Defendants interfered with her First and Fourteenth Amendment right to familial association. *Id*. at 34-36. The conduct is not specifically identified, but Plaintiff alleges that Defendant Blanck's conduct violated her right to familial association and that Defendants "directed [] subordinates in the acts that deprived [her] of her rights." *Id*. at 35. In Claim-6, Plaintiff alleges that Defendant County had an unconstitutional policy that prevented "Humboldt County Counsel from taking placement of foster children in Humboldt County." *Id*. at 36. Plaintiff adds that Defendant Blanck had final policymaking authority regarding conflicts, that Defendant County ratified and approved Defendant Blancks' actions, and that Defendants directed subordinates to deprive Plaintiff of her right to familial association. *Id*. at 36.

Plaintiff also asserts six state law claims. In Claim-7, Plaintiff alleges that Defendants violated California Civil Code § 1102.5 by retaliating against her "after she engaged in a protected

activity . . . ." *Id*. at 39. Claim-8 asserts that Defendants violated her right to privacy under the California Constitution. *Id*. at 40-42. The alleged conduct mirrors her first claim. *Id*. at 40-41 (Defendant Blanck falsely accused Plaintiff of having a professional ethical violation, Defendant Blanck required Plaintiff to choose between her employment or withdrawing her motion in GN's dependency case, and Defendant Blanck terminated Plaintiff's employment when she refused). Claim-9 asserts that Defendants defamed Plaintiff in violation of California Civil Code § 43. *Id*. at 42-44. In Claim-10, Plaintiff alleges that Defendants intentionally interfered with her contract with the Humboldt County superior court. *Id*. at 44-45. Specifically, she alleges that Defendants filed motions to disqualify her from dependency cases (even cases that did not exist when she worked for the County), and that Defendant Blanck filed a false or inaccurate complaint to the California state bar. *Id*. Plaintiff's two remaining claims are for intentional and negligent infliction of emotional distress for "conduct set forth herein above . . . ." *Id*. at 45-47.

*Plaintiff's Factual Allegations:*

Plaintiff organized her factual allegations into four sections: 1) Defendant Blanck's final policymaking authority; 2) Plaintiff's employment and termination; 3) Plaintiff's motions in GN's dependency case; and 4) Defendants' conduct after termination of Plaintiff's employment with the County Counsel's office. SAC (dkt. 57-2) at 5-24. The SAC contains largely the same set of factual allegations as the FAC – particularly those regarding her relationship with GN and Defendant Blanck's conduct related to her employment and conflict of interest. Thus, the court incorporates the summary of Plaintiff's factual allegations in its previous order ((dkt. 55) at 3-11) and relays only the newly asserted facts.

First, regarding final policymaking authority, Plaintiff alleges that the provisions of the California State Bar Act apply to all attorneys, including Defendant Blanck, and attorneys have duties to comply with disciplinary investigations, disciplinary proceedings, and reporting requirements. *Id*. at 6. She adds that Defendant Blanck, like all attorneys licensed to practice in the state of California, is subject to the California Rules of Professional Conduct ("CRPC"). *Id*. Rule 5.1 sets forth the responsibilities of managerial and supervisory attorneys in a law firm. *See* Cal. Rule of Prof. Conduct 5.1. A comment to the rule provides examples of the "reasonable efforts to

4

establish internal policies and procedures" and includes policies and procedures "to detect and resolve conflicts of interest . . . ." *Id*.; *see* Cal. Rule of Prof. Conduct 5.1(a), Comment 1.[3] Plaintiff asserts that, as County Counsel, Defendant Blanck had managerial authority over the attorneys in the County Counsel's office, including Plaintiff. *Id*. at 6-7. As such, he was "responsible for setting policies, procedures and rules relevant to the identification, prevention and response to ethical conflicts arising during the course of dependency matters." *Id*. at 7. Further, "[t]he establishment, maintenance and decision-making regarding conflicts was by operation of state law, delegated to the general operation of the County Counsel's office." *Id*.

Plaintiff also states that Defendant Blanck evaluated her performance when she served as a deputy county counsel. *Id*. Defendant Blanck rated her performance as "outstanding" in nearly all categories except for two, which he marked as "above average." *Id*. Plaintiff received a promotion following this review. *Id*. Five months before her termination, Defendant Blanck completed another performance evaluation, and Plaintiff received the highest marks with the exception of some issues regarding "legal ethics." *Id*. at 8. Plaintiff asserts that Defendant Blanck approved of all determinations made and responses regarding the alleged conflict of interest arising from her relationship to GN and her involvement in GN's dependency case. *Id*. at 9.

Regarding her motions in GN's dependency case, Plaintiff adds facts describing the landscape of Humboldt County's Child Welfare Services ("CWS"). *Id*. at 18-19. Plaintiff alleges that "[t]he welfare of a community's children is a matter of public concern," and Humboldt County's CWS is dedicated to ensuring the physical safety and the needs of its minor children. *Id*. at 18. She adds that juvenile courts play a central role in this system by "ensuring an appropriate balance in addressing the needs of minors, the right of the parties involved, and the intervention of the government into the lives of residents [of] the County." *Id*. Plaintiff asserts that courts "cannot competently balance these interests without the participation of individuals with relevant knowledge, experience and expertise," and her motions and participation in GN's dependency case

---

[3] Plaintiff states that although Rule 5.1 was enacted on November 18, 2018, after her termination on June 4, 2018, it was a codification of "existing case law on the duties of managerial and supervisory lawyers." SAC (dkt. 57-1) at 6. As such, the rule does not set forth new requirements but merely clarifies existing duties.

United States District Court
Northern District of California

assisted the juvenile court. *Id*. at 18-19.

As for the post-termination conduct, Plaintiff asserts that Defendants interfered with her job prospects as court-appointed counsel in dependency proceedings. *Id*. The Executive Director of Dependency Legal Services (a liaison for the Humboldt County Superior Court's panel of court-appointed counsel) ("Executive Director") requested details about her departure from the County Counsel's office. *Id*. at 20. The Executive Director also spoke to Defendant County's outside counsel about the County's position on signing a waiver of potential conflicts of interest for Plaintiff's future assignments to dependency cases. *Id*. at 20-21. The County's outside counsel stated that Defendant County would sign a waiver only if Plaintiff agreed to release her claims against the County. *Id*. Plaintiff refused to do so, and Defendant County did not execute the requested waiver. *Id*. at 21. Ultimately, Plaintiff obtained a contract with Humboldt County superior court to accept appointments to dependency proceedings. *Id*.

A few days after Plaintiff's first dependency court appearance as court-appointed counsel, a deputy county counsel "made motions to disqualify Plaintiff from all of her cases, including newly filed cases not in existence at the time of her employment with Defendant County," and another deputy county counsel made similar motions in cases that existed when Plaintiff worked for the County. *Id*. at 21-22. As the SAC explains, "[t]hese motions were made in court in front of Plaintiff's . . . clients, family members, court staff, and other dependency staff," and deputy county counsels "openly discussed Plaintiff's separation from employment with County Counsel in terms that made it clear . . . that the separation was involuntary." *Id*. at 22. Additionally, a deputy county counsel argued that Plaintiff's clients had to acknowledge the conflict on the record. *Id*. Plaintiff asserts that Defendants purposefully delayed raising these issues until court was in open session, requiring her to discuss the details of the alleged conflict of interest with her clients. *Id*.

In addition to the oral motions, Plaintiff received written motions to disqualify her from dependency cases accusing her of having a conflict of interest that "present[ed] a 'clear suggestion of impropriety.'" *Id*. The motions failed to mention that Defendants offered to waive any conflicts of interest if Plaintiff would agree to waive her claims against the County. *Id*. One motion contained a declaration by a social worker who was familiar with Plaintiff "as a foster parent and

6

1    as an attorney for CWS." *Id.* at 22-23. On behalf of this social worker, CWS "strenuously"

2    objected to Plaintiff's appointment in that dependency matter. *Id.* Plaintiff asserts that "[t]hese

3    statements falsely communicated that [she] was somehow deficient as a foster parent and as a

4    deputy county counsel . . . ." *Id.* at 23. If the motions had been successful, she would not have

5    been able to fulfill her contract with the court and would have lost income. *Id.*

6        Regarding the complaint to the California state bar, Defendant Blanck accused Plaintiff of

7    "knowingly creat[ing] a conflict and continu[ing] to operate in spite of the conflict." *Id.* Plaintiff

8    notes that the complaint did not mention that she had been approved to foster GN and did so for

9    nearly two years while she was employed by Defendant County. *Id.* Defendant Blanck also alleged

10   that Plaintiff was "unsuccessful" in handling non-dependency matters, contrary to the performance

11   reviews and promotion. *Id.*

12                                    **STANDARD OF REVIEW**

13       A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights,

14   privileges, or immunities secured by the Constitution and [federal] laws," that were perpetrated by

15   a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983;

16   *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-95 (1978). In the present context, in

17   order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a

18   plaintiff must allege facts that "raise a right to relief above the speculative level," *Bell Atl. Corp. v.*

19   *Twombly*, 550 U.S. 544, 555 (2007); thus, the "complaint must contain sufficient factual matter,

20   accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

21   662, 678 (2009). While "all well-pleaded allegations of material fact are taken as true and

22   construed in a light most favorable to the nonmoving party," *Wyler Summit P'ship v. Turner*

23   *Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998), the court is not required to accept as true

24   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.

25   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Thus, mere recitals of the

26   elements of a cause of action, supported only by conclusory statements, are insufficient. *Iqbal*, 556

27   U.S. at 678; *Twombly*, 550 U.S. at 555.

28       Dismissal for failure to state a claim is appropriate only where it appears, beyond doubt,

United States District Court
Northern District of California

7

that the plaintiff can prove no set of pleaded facts that would entitle her or him to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In short, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must plausibly suggest a claim entitling the plaintiff to relief. *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).

## DISCUSSION

To put it briefly, the County's pending Motion to Dismiss the SAC argues that Plaintiff has failed to allege any new facts that could support any of her claims under § 1983 or state law. First, the County asserts that Plaintiff has failed to allege a basis for municipal liability for Claims 1-6 because Plaintiff did not sufficiently allege that Defendant Blanck was a final policymaker, a final policymaker ratified or approved any of the alleged unconstitutional acts, or that the policy caused her to suffer a deprivation of an alleged constitutional right. Def.'s Mot. (dkt. 61) at 12-17. Second, it argues that Plaintiff has failed to allege that the asserted constitutional rights to privacy, speech, and familial association applied to her under the circumstances (i.e. her employment with Defendant County, her relationship with GN, Defendants' involvement in GN's dependency proceedings as counsel, and the inaccessibility of dependency proceedings to the general public). *Id*. at 17-25.

Turning to the state law claims, the County argues that Plaintiff failed to allege a violation of Cal. Civ. Code § 1102.5 because the activities pled are not within the protected activities covered by the statute. *Id*. at 25-26. As for the privacy claim under the California constitution, Defendant asserts that it is unsettled whether a plaintiff may sue for damages under this provision, and Plaintiff had no reasonable expectation of privacy, and if she did, no serious invasion of privacy occurred. *Id*. at 26-28. The County argues that the defamation claim also fails for the following reasons: 1) statements asserting the existence of a conflict of interest are not assertions of fact; 2) the statements were privileged as part of judicial and quasi-judicial proceedings; and 3) the exception for non-communicative acts does not apply. *Id*. at 28-30. The County argues that the intentional interference with contract claim fails because there was no actual breach or disruption of her employment contract with the Humboldt Superior Court. *Id*. at 30-31. Additionally, the

United States District Court
Northern District of California

County argues that leave to amend would be futile because the County is immune from suit for torts, and this contract interference claim is dependent on the same allegedly defamatory publications that are shielded from liability. *Id*. at 31. Finally, for the remaining infliction of emotional distress claims (intentional and negligent), the County asserts that Plaintiff fails to allege what conduct specifically caused Plaintiff's emotional distress. *Id*. Also, the County asserts that the "exclusive remedy doctrine" applies to claims like these where the alleged emotional distress is attributed to actions which are a normal part of an employment relationship (e.g., promotions, demotions, performance reviews, etc.). *Id*. at 31-32.

In her Opposition, Plaintiff offers some arguments in support of her claims. First, Plaintiff states that she sufficiently alleged municipal liability in three ways. Pl.'s Opp. (dkt. 63) at 12-16. She asserts that the Code of Professional Conduct establishes that Defendant Blanck is an official with final policymaking authority over ethical conflicts for two reasons: 1) the County is not an attorney, and under the Rules of Professional Conduct, non-attorneys cannot set conflict of interest policy for attorneys, and 2) Defendant Blanck has a nondelegable duty to supervise the attorneys within the County Counsel's Office. *Id*. at 12-15. Second, Plaintiff argues that the County cannot separate Plaintiff's termination from the conflict policy (i.e. the termination was a consequence of the policy) to avoid municipal liability; specifically, "the decision to establish and implement" the policy was a choice among many alternatives, as illustrated by earlier screening measures, to address the perceived conflict of interest. *Id*. at 15-16. Third, Plaintiff argues that the County adopted or ratified Defendant Blanck's conduct when it reviewed and dismissed Plaintiff's complaint about the treatment she received during her employment and the circumstances surrounding her termination. *Id*. at 16.

Next, Plaintiff argues that Defendants did violate her constitutional rights to privacy, familial association, and petition to the courts. *Id*. at 16-20. Plaintiff points to her arguments in her opposition to the previous motion to dismiss to bolster her privacy claims. *Id*. at 17-18. In support of her right to petition under the First Amendment, Plaintiff recites the allegations in her SAC and adds that her motions to become a *de facto* parent were for the benefit of the juvenile court and society, not for her own benefit. *Id*. at 20. As for her right to familial association, Plaintiff argues

against Defendant's characterization of her relationship as effortless and devoid of affirmative choice to associate. *Id*. She asserts that the SAC is full of instances where she made choices to assist in GN's care and opened her home to GN. *Id*. Regarding her state law claims, Plaintiff argues that her right to privacy claim is not based on discussion regarding the conflict itself but rather is based on the disclosure of private information about her home and family to her employer, colleagues, and the court. *Id*. at 21. After raising arguments against issues not raised by Defendant County, Plaintiff argues that the motions to disqualify her from dependency cases were not privileged under Cal. Civ. Code § 47 because "the gravamen of the action" that caused her injury was noncommunicative conduct. *Id*. at 22. Also, she argues, without much discussion, that malicious prosecution actions are also not privileged. *Id*. Finally, Plaintiff argues that Defendant County interfered with her contract with the superior court because instead of representing her clients "in the substance of their cases, [she] was required to engage in a number of other activities," such as defending herself against the motions to disqualify her. *Id*. at 22-23.

### Claims 1 through 6 – Municipal Liability

Local government entities are considered "persons" for the purposes of being subject to liability under § 1983 where an official policy or custom causes a constitutional tort, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); however, a municipality may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must establish: (1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation. *See Plumeau v. School Dist. No. 40*, 130 F.3d 432, 438 (9th Cir. 1997); *see also AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). A plaintiff must allege sufficient facts regarding the specific nature of the policy, custom or practice to allow the defendant to effectively defend itself, and these facts must plausibly suggest that the plaintiff is entitled to relief. *AE ex rel. Hernandez*,

United States District Court
Northern District of California

10

666 F.3d at 637.

A plaintiff may establish municipal liability in one of three ways: 1) establish that a formal government policy or longstanding practice or custom caused her injury; 2) show that an official with final policymaking authority acted in a way that injured her rights and the act was itself the result of a deliberate choice made among alternatives; or 3) show an official policymaker either delegated such authority to, or ratified the deprivation by, a subordinate. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988); *Trevino v. Gates*, 99 F.3d 911, 920-21 (9th Cir. 1996); *Goldstein v. Cty. of San Mateo*, No. 05-cv-03209-SBA (PR), 2008 WL 2954173, at *10 (N.D. Cal. July 30, 2008) (citing *Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir. 1995). "Whether a particular official has final policy-making authority is a question of state law." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); and *Praprotnik,* 485 U.S. at 123-24). Additionally, "[p]roof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to establish the existence of a municipal policy or custom." *Goldstein*, 2008 WL 2954173, at *11.

Before launching into whether Plaintiff adequately alleges that Defendant Blanck had final policymaking authority, a final policymaker adopted or ratified Defendant Blanck's conduct, or the existence of a constitutionally invalid policy, it is useful to sort the complained of conduct underlying Plaintiff's claims. The conduct can be sorted into four categories: 1) pre-policy conduct, 2) the policy, 3) Plaintiff's termination, and 4) post-termination conduct. The first category covers the screening measures taken to prevent Plaintiff from accessing information about GN's case and the meetings Defendant Blanck held with Plaintiff leading up to her termination. The second category of conduct is the enactment of the policy forbidding deputy county counsel from taking placement of foster children in Humboldt County. *Id*. at 17-18. The third category is Plaintiff's termination due to her refusal to withdraw her motions for *de facto* parent status. Finally, the fourth category consists of the motions to disqualify Plaintiff from cases in her new employment as court-appointed, dependency counsel, and the state bar complaint filed by Defendant Blanck. *Id*. at 20-21.

For Claims 1 through 6 to survive against Defendant County, Plaintiff must adequately

allege a basis for municipal liability – an unconstitutional policy, unconstitutional conduct by an official with final policymaking authority, or ratification of the alleged unconstitutional conduct by an official policymaker. Plaintiff alleges there are two bases for municipal liability. First, Defendant Blanck is a final policymaker for ethical conflicts of attorneys in the County Counsel's office. Second, the County adopted or ratified Defendant Blanck's conduct by reviewing and dismissing Plaintiff's claim filed after her termination.

Final Policymaking Authority

As stated above, the question of "[w]hether a particular official has final policy-making authority is a question of state law." *Gillette*, 979 F.2d at 1346 (citing *Jett*, 491 U.S. at 737; and *Praprotnik,* 485 U.S. at 123-24). "That is 'our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.'" *Streit v. Cty. of Los Angeles*, 236 F.3d 552, 560 (9th Cir. 2001) (quoting *McMillian v. Monroe County,* 520 U.S. 781, 786 (1997)). Specifically, federal courts look to state laws, county charters and codes, and city charters to determine if a municipal employee has final policymaking authority in a particular domain, such as employment policy. *See Ryan v. Santa Clara Valley Transp. Auth.*, No. 16-cv-04032-LHK, 2017 WL 3142130, at *7 (N.D. Cal. July 25, 2017) (looking to the California Public Utility Code to assess whether a general counsel had authority to set final employment policy for Santa Clara Valley Transportation Authority); *Scooter's Pals Rescue v. Cty. of Placer*, No. 2:12-cv-01736-GEB, 2012 WL 5214287, at *6 (E.D. Cal. Oct. 22, 2012) (examining the California constitution, California government code, county charter, and county code to determine whether individuals possessed final policymaking authority in the domain of the challenged conduct); *Zografos v. City & Cty. of San Francisco*, No. 05-cv-3881-PJH, 2006 WL 3699552, at *16 (N.D. Cal. Dec. 13, 2006) (referring to the city charter to determine whether city managers possessed authority to set final employment policy) (citing *Hyland v. Wonder*, 117 F.3d 405, 414 (9th Cir.), *opinion amended on denial of reh'g*, 127 F.3d 1135 (9th Cir. 1997) ("[U]der California law, a city's Charter determines municipal affairs such as personnel matters.")). Additionally, "[a] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the

12

1 | applicable law purports to put it." *Praprotnik,* 485 U.S. at 126.

2 |     In her SAC, Plaintiff relies on the California Rules of Professional Conduct to show that

3 | Defendant Blanck was the final policymaker for ethical conflicts in the County Counsel's office.

4 | Specifically, Plaintiff cites to a comment on Rule 5.1 that provides examples of the type of

5 | policies and procedures that attorneys who exercise managerial authority over other attorneys may

6 | need to make. The comment's first example is to "make reasonable efforts to establish internal

7 | policies and procedures designed, for example, to detect and resolve conflicts of interest . . . ."

8 | SAC (dkt. 57-1) at 6. In her Opposition, Plaintiff adds that the Rules of Professional Conduct

9 | prohibit non-attorneys from setting policy relating to conflicts of interest, and that Defendant

10 | Blanck, as an attorney licensed by the California state bar, had a non-delegable duty to detect and

11 | resolve conflicts. Pl.'s Opp. (dkt. 63) at 14.[4] However, Plaintiff fails to identify any state law or

12 | county code stating who is authorized to set employment policy at the county level. The case law

13 | makes clear that specificity is key to determining where final policymaking authority lies, and a

14 | federal court cannot assume "that municipal policymaking authority lies somewhere other than

15 | where the applicable law purports to put it." *Praprotnik,* 485 U.S. at 126. Thus, Plaintiff's reliance

16 | on general rules of professional conduct governing all attorneys licensed in the state of California

17 | does not meet the requisite level of specificity to establish that Defendant Blanck is an official

18 | with final policymaking authority.

19 |     In its Motion to Dismiss, Defendant County identifies Humboldt County Code Title II,

20 | Divisions 4 and 5 and the California Government Code §§ 27642 and 27644 as the relevant

21 | sources of law to determine where final policymaking authority lies. Def.'s Mot. (dkt. 61) at 12.

22 | Neither of these sources establish that Defendant Blanck, as County Counsel, had final authority

23 | to set employment policy. Humboldt County is a "general law county" and thus does not have a

24 |

25 | ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26 | [4] Taking Plaintiff's argument to its logical conclusion would mean that no political body could set policy
governing the employment of attorneys who work in the state and local government. It appears that

27 | Plaintiff is implying that the County cannot set policy without Defendant Blanck, or through another
attorney who may possess the role of County Counsel, regardless of whatever grant of authority is set by

28 | law, code, or charter because that body is not itself a lawyer.

United States District Court
Northern District of California

county charter,[5] so the court turns to California statutes and the state constitution to find support for Plaintiff's assertion that Defendant Blanck is a final policymaker. It finds none. Chapter 12 of the California Government Code establishes the parameters of county counsels' general authority, and there is no grant of authority to set employment policy therein. *See* Cal. Gov't Code Ch. 12. Elsewhere in the California Government Code, boards of supervisors are tasked with the responsibility of overseeing "the official conduct of all county officers, and officers of all districts and other subdivisions of the county . . . ." Cal. Gov't Code § 25303. Finally, the California Constitution "is silent as to the responsibilities and status of County Counsel." *See Scooter's Pals Rescue*, 2012 WL 5214287, at *6.

Moreover, "the authority to exercise discretion while performing certain functions does not make the official a final policymaker unless the decisions are final, unreviewable, and not constrained by the official policies of superiors." *See Prapotnik,* 485 U.S. at 126-28. In the SAC, Plaintiff alleges that she filed a claim that "included the allegations raised in Plaintiff's [SAC] with the exception of allegations relevant to the complaint made to the State Bar," and the claim was investigated and ultimately dismissed by the Board of Supervisors. SAC (dkt. 57-1) at 4. This allegation demonstrates that Defendant Blanck's conduct was not "unreviewable" because his conduct was actually reviewed by his superiors – Humboldt County's Board of Supervisors. Therefore, while Defendant Blanck had the authority – and duty under the rules of professional conduct – to address potential or actual conflicts of interest for attorneys under his supervision, that authority did not transform him into a government official with final policymaking authority.

Ratification by an Official with Final Policymaking Authority

To establish municipal liability based on ratification, a plaintiff must "'prove that an official with final policy-making authority ratified a subordinate's decision or action and the basis for it.'" *Trevino,* 99 F.3d at 920 (quoting *Gillette,* 979 F.2d at 1346-47; and citing *Praprotnik,* 485 U.S. at 127). "To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior*

---

[5] California State Association of Counties, *County Structure & Powers,*  https://www.counties.org/general-information/county-structure-0 (last visited August 2, 2020).

liability into section 1983 law under the guise of *Pembaur*'s 'single decision' rule." *Gillette*, 979 F.2d at 1348. Therefore, a decision by a municipality's final policymaker not to overrule a subordinate's unlawful conduct is insufficient to establish ratification. *See id.*, (finding that a city manager's failure to overturn a subordinate's decision to terminate the plaintiff's employment and hiring counsel to represent the city against the plaintiff's grievance in arbitration to be insufficient evidence of ratification); *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010) (holding that the plaintiff failed to show ratification through evidence of failure of an administrative director for the county's mental health services department to discipline a subordinate), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016); *Trevino*, 99 F.3d at 920-21 (ruling that a city council's decision to pay punitive damages to victims of constitutional deprivations committed by its subordinates did not constitute a decision to approve the subordinates' conduct, and thus fell short of ratification).

In her SAC, Plaintiff alleges that she filed a claim against Defendant County for damages under the California Government Code. SAC (dkt. 57-1) at 4. The claims included all of those alleged in this instant action except for Defendant Blanck's complaint to the state bar. *Id.* After conducting an investigation, the County rejected Plaintiff's claims. *Id.* In her Opposition, Plaintiff cites to *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999), in support of her allegations that the County's dismissal of her claims constituted ratification of Defendant Blanck's conduct. Pl.'s Opp. (dkt. 63) at 16. That case is inapposite. In *Christie*, the court found that summary judgment was due to be denied because a rational jury could find ratification based on evidence that an official with final policymaking authority was involved in the underlying conduct, and thus, possessed knowledge of the constitutional deprivation and tacitly approved the violation. *Id.* at 1239-40. Here, Plaintiff does not allege that the Board of Supervisors, via its members, were involved in Defendant Blanck's conduct. She alleges that the assistant county counsel was present at meetings where Defendant Blanck discussed Plaintiff's motions in GN's case and the alleged conflict of interest. SAC (dkt. 57-1) at 16-18. Per California state law and Humboldt County Code, neither the County Counsel nor the assistant county counsel possess final policymaking authority over employment decisions. The same flaws exist for Plaintiff's claims based on the motions to

1    disqualify her from dependency cases as court-appointed counsel. Thus, Plaintiff has failed to

2    allege ratification.

3         Accordingly, Plaintiff has not, as a matter of state law, established that Defendant Blanck

4    possessed final authority to set employment policy for Defendant County. Nor has Plaintiff

5    sufficiently alleged ratification by an official with final policymaking authority. Additionally, it

6    appears that no amendment could cure this defect because Claims 1-5 are predicated on Defendant

7    Blanck's pre-policy conduct, post-termination conduct, or his state bar complaint, and thus,

8    Claims 1-5 against Defendant County are due to be dismissed with prejudice.

9    Claim 6 and Causation

10        Another element a plaintiff must allege to establish municipal liability is that the policy,

11   custom or practice was the moving force behind the constitutional violation. *See Plumeau*, 130

12   F.3d at 438; *see also AE ex rel. Hernandez*, 666 F.3d at 636. To satisfy the causation requirement

13   of § 1983, the Ninth Circuit has held that a plaintiff must show that the policy, custom, or practice

14   was both the cause-in-fact and the legal or proximate cause of the constitutional violation. *See*

15   *Arnold v. Int'l Bus. Machs. Corp.,* 637 F.2d 1350, 1355 (9th Cir.1981); *see also Hutchens v.*

16   *Alameda Cty. Soc. Servs. Agency*, No. 06-cv-06870-SBA, 2008 WL 4193046, at *4 (N.D. Cal.

17   Sept. 10, 2008).

18        Plaintiff asserts one claim against Defendant County on the basis of the conflict policy.

19   Plaintiff alleges that the County "had an official policy that prevented Humboldt County Counsel

20   from taking placement of foster children in Humboldt County," and that the policy deprived

21   Plaintiff of her right to familial association under the First and Fourteenth Amendments. SAC

22   (dkt. 57-1) at 36. Defendant argues that the policy did not cause a deprivation of a constitutional

23   right because "when Blanck fired [Plaintiff] for not dropping her dependency motion, she was not

24   fostering the child," and Plaintiff was not seeking to foster GN when she was terminated, "rather

25   she sought *de facto* parent status and visitation." Def.'s Mot. (dkt. 61) at 16-17.

26        The policy did not prevent county counsel from filing *de facto* parent motions in

27   dependency cases in Humboldt County or prohibit requesting visitation of children in the

28   dependency court system. Rather, it prohibited counsel from fostering children in Humboldt

United States District Court
Northern District of California

16

County. Plaintiff's foster parent relationship with GN ended in September of 2017 when GN was returned to the care of his parents. SAC (dkt. 57-1) at 13. Additionally, when she was fired, Plaintiff was not attempting to become GN's foster parent; instead, she filed motions to become his *de facto* parent which would endow her with certain due process rights in GN's dependency case. *Id*. at 15-16, 18-19. Thus, the policy was not the "moving force" behind the alleged deprivation of her constitutional rights. Accordingly, Plaintiff failed to sufficiently allege a basis for municipal liability to support Claim-6, and it is due to be dismissed. Moreover, the defect cannot be cured by amendment; therefore, Claim-6 against Defendant County is dismissed with prejudice.

**State Law Claims**

District courts have supplemental jurisdiction over all claims that are so related to claims that are within its original jurisdiction. *See* 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction "where the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Conversely, a court may retain jurisdiction over state law claims when considerations of "judicial economy, convenience, fairness, and comity" weigh in favor of doing so. *Johnson v. Cala Stevens Creek/Monroe, LLC*, 401 F. Supp. 3d 904, 911 (N.D. Cal. 2019) (quoting *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008)).

Judicial economy and convenience of the parties weigh in favor of this court retaining jurisdiction over the state law claims because this case has been pending for nearly a year and the conduct underlying the state law claims is based on the same set of facts as the federal claims. Moreover, Defendant County did not raise concerns of fairness or convenience of the parties in the event this court retained jurisdiction; rather, it submitted arguments against each claim. Additionally, for all but Claim-8, this case does not present novel or complex issues of state law or deprive the state court of a significant opportunity to develop state law, and thus, comity does not weigh against retaining jurisdiction. Accordingly, the court may retain jurisdiction over Plaintiff's state law claims, and does so for all except Claim-8, as discussed below.

//

1    Claim 7 – California Labor Code § 1102.5

2          As stated in the court's previous order, Section 1102.5 protects whistleblowers from

3    employer retaliation. "Section 1102.5 is a whistleblower statute, the purpose of which is to

4    encourage[e] workplace whistle-blowers to report unlawful acts without fearing retaliation." *Lewis*

5    *v. Wells Fargo Bank, N.A.*, 2016 WL 7107760, at *2 (C.D. Cal. Dec. 5, 2016) (quoting *Soukup v.*

6    *Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 287 (Cal. Ct. App. 2006)). "To establish a prima

7    facie case of retaliation 'a plaintiff must show (1) she engaged in a protected activity, (2) her

8    employer subjected her to an adverse employment action, and (3) there is a causal link between

9    the two.'" *Mokler v. Cty. of Orange*, 157 Cal. App. 4th 121, 138 (Cal. Ct. App. 2007) (quoting

10   *Patten v. Grant Joint Union High Sch. Dist.,* 134 Cal. App. 4th 1378, 1384 (Cal. Ct. App. 2005)).

11   "'Protected activity is the disclosure of or opposition to a violation of state or federal statute, or a

12   violation or noncompliance with a state or federal rule or regulation.'" *Smith v. Cty. of Santa*

13   *Clara*, No. 5:11-cv-05643-EJD, 2016 WL 4076193, at *24 (N.D. Cal. Aug. 1, 2016) (quoting

14   *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191, 1199 (Cal. Ct. App. 2012)). "An employee

15   engages in protected activity when she discloses to a governmental agency reasonably based

16   suspicions of illegal activity." *Mokler*, 157 Cal. App. 4th at 138 (internal quotations omitted). A

17   plaintiff cannot rely "on general constitutional doctrines" to establish that their opposition to an

18   employer's conduct constituted a protected activity; rather a plaintiff must identify a state or

19   federal statute or regulation that prohibited the employer's conduct. *Smith*, 2016 WL 4076193, at

20   *24 (finding that employees failed to allege that they engaged in a protected activity by opposing

21   their employer's decision to employ male nurses in the post-partum unit which the plaintiffs

22   alleged to violate the patients' substantive due process and privacy rights under the constitution).

23         In her SAC, Plaintiff asserts the same allegations in support of her § 1102.5 claim as she

24   did in her FAC. *See* SAC (dkt. 57-1) at 38-40; FAC (dkt. 42) at 28-30. Plaintiff did not add facts

25   showing that she engaged in the type of conduct protected by the statute. She makes the same

26   conclusory allegation that she "engaged in protected activity as defined under Labor Code §

27   1102.5." SAC (dkt. 57-1) at 39. As far as the court can tell, the only factual allegation underlying

28   this claim is that Defendant County fired her for refusing to withdraw her motions in GN's

1      dependency case. Defendant argues that Plaintiff's § 1102.5 claim fails because she does not

2      identify a statute or regulation that she believes Defendant County violated, or state that she

3      reported such a violation, or state that Defendant County fired her for reporting such a violation.

4      Def.'s Mot. (dkt. 61) at 26.

5             Once again Plaintiff has failed to sufficiently allege that Defendant County violated §

6      1102.5 because she does not state facts showing that she engaged in the type of activities it

7      protects. Specifically, Plaintiff did not allege facts showing that she disclosed any unlawful or

8      noncompliant conduct by Defendants to an internal or external official who possessed "authority

9      to investigate, discover, or correct the violation or noncompliance," or that she provided

10     information to or testified before a public body about any violation or noncompliance with a law

11     or regulation. Cal. Lab. Code § 1102.5(b). Plaintiff also did not "refuse to participate in an activity

12     that would result in violation of state or federal statute, or a violation of or noncompliance with a

13     local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(c). While Plaintiff refused to

14     withdraw her motions in GN's dependency case, her refusal is not the type of refusal protected by

15     § 1102.5(c). Plaintiff's § 1102.5 claim is premised on purported violations of the United States

16     Constitution. Her refusal to withdraw her motions or quit her employment was not a refusal to take

17     part in a violation of the Constitution, but rather a refusal to be subjected to an alleged

18     constitutional violation, not commit one herself. Thus, Plaintiff fails to state a claim under §

19     1102.5, and it is due to be dismissed.

20     Claim 8 – Privacy under the California Constitution

21            To state a claim for violation of privacy under the California Constitution, a plaintiff must

22     allege "'(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the

23     circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.'"

24     *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1037 (N.D. Cal. 2019) (quoting *Hill v. NCAA*, 7

25     Cal. 4th 1 at 39-40 (Cal. 1994)). While it is generally true that plaintiffs may bring actions for

26     declaratory relief or an injunction, it is not certain that plaintiffs may maintain an action for

27     monetary damages to remedy alleged violations for constitutional provisions. *Katzberg v. Regents*

28     *of Univ. of California*, 29 Cal. 4th 300, 307 (Cal. 2002). In *Katzberg*, the California Supreme court

United States District Court
Northern District of California

19

set forth the framework "for determining the existence of a damages action to remedy an asserted constitutional violation." *Id.* at 317. However, California state courts have not yet determined whether article I, section 1 of the California constitution provides a right to damages. *See John v. Lake Cty.*, No. 18-cv-06935-WHA, 2019 WL 859227, at *6-*7 (N.D. Cal. Feb. 22, 2019) (stating that whether there is a private right of action for damages for privacy claims is an important, undecided issue of California law); *see also Espinosa v. City & Cty. of San Francisco*, No. 11-cv-02282-JSW, 2011 WL 6963094, at *3-*4 (N.D. Cal. Sept. 7, 2011) (summarizing cases applying *Katzberg* and citing no case resolving the issue of whether there is a right to damages for article I, section 1); *but see Brahmana v. Henard*, No. 10-cv-01790 JW, 2011 WL 7293390, at *7-*8 (N.D. Cal. Mar. 23, 2011) (dismissing claims for damages under article I, section 1 misconstruing a footnote in *Katzberg* – advising that a precedent should not be read to authorize a right to damages but rather "represent[ed] the foundation . . . of the common law invasion of privacy tort" – as holding that there is no right to damages for article I, section 1.), *aff'd in part*, 474 F. App'x 513 (9th Cir. 2012).

Because the California courts have not had occasion to address the issue of whether plaintiffs may maintain an action for monetary damages under article I, section 1, this court would be required to apply the *Katzberg* framework, which includes a detailed review of the legislative intent behind the constitutional provision. Therefore, the court finds the issue to be a novel and complex issue of California law, and, thus, declines to exercise supplemental jurisdiction over the claim. *See* 28 U.S.C. §1367(c)(1). [6]

Claim 9 – Defamation

California Civil Code § 43 provides in relevant part that "every person has, subject to the qualifications and restrictions provided by law, the right of protection . . . from defamation . . . ." It proscribes both written and verbal statements that tend to injure one in their profession. *See* Cal. Civ. Code §§ 44, 45, 46. "Under California law, '[t]he elements of a defamation claim are (1) a

_____

[6] Plaintiff makes a general request for injunctive relief for all of her claims. *See* SAC (dkt. 57-1) at 48. However, the generalized request does not justify this court's exercise of supplemental jurisdiction over Claim-8 due to the state court's interest in resolving the important issue of whether there is a private right to monetary damages for violations of article I, section 1 of the California constitution.

United States District Court
Northern District of California

1   publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to

2   injure or causes special damage.'" *Holden v. Target Corp.*, No. 16-cv-02217-JST, 2016 WL

3   3938950, at \*5 (N.D. Cal. July 21, 2016) (quoting *Sanders v. Walsh*, 219 Cal. App. 4th 855, 862

4   (Cal. Ct. App. 2013)). To state a claim for defamation, a plaintiff must allege a statement of fact

5   that is capable of being proven true or false; a statement of opinion will not suffice. *Holden*, 2016

6   WL 3938950, at \*5. An expressed belief of "the existence of a conflict of interest does not imply

7   an objective fact that can be proved to be true or false." *Savage v. Pac. Gas & Elec. Co.*, 21 Cal.

8   App. 4th 434, 444-45 (Cal. Ct. App. 1993). Likewise, a statement regarding unsatisfactory job

9   performance is an opinion, not a statement of fact. *See Morrow v. Los Angeles U.S.D.*, 149 Cal.

10   App. 4th 1424, 1443-44 (Cal. Ct. App. 2007).

11         California Civil Code § 47(b) establishes a litigation privilege for "publication[s]" made as

12   part of a "judicial proceeding." "[T]he privilege applies to any communication (1) made in judicial

13   or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to

14   achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the

15   action." *Silberg v. Anderson*, 50 Cal.3d 205, 212 (Cal. 1990) ("the *Silberg* test"). The privilege is

16   absolute. *See Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007).

17   "Any doubt as to whether the privilege applies is resolved in favor of applying it." *Gamble v.*

18   *Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1029 (N.D. Cal. 2018) (quoting *Comstock*

19   *v. Aber*, 212 Cal. App. 4th 931, 952 (Cal. Ct. App. 2012)). It also applies to communications that

20   are false or pretextual. *Id.* (citing *Gallanis-Politis v. Medina*, 152 Cal. App. 4th 600, 604, 615-17

21   (Cal. Ct. App. 2007)).

22         The threshold question in determining whether the privilege applies is "whether the

23   defendant's conduct was communicative or noncommunicative." *Rusheen v. Cohen*, 37 Cal. 4th

24   1048, 1058 (Cal. 2006). "[T]he privilege does not extend to noncommunicative conduct that is not

25   of necessity related to communicative conduct." *Chen v. Berenjian*, 33 Cal. App. 5th 811, 821-22

26   (Cal. Ct. App. 2019). The limit to communicative conduct furthers the purpose of the litigation

27   privilege which is "'to promote effective judicial proceedings by encouraging full

28   communication.'" *Id.* (quoting *Optional Capital, Inc. v. DAS Corp.*, 222 Cal. App. 4th 1388,1404

(Cal. Ct. App. 2014). "[T]he key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." *Id*. The "'[p]leadings and process in a case are generally viewed as privileged communications." *Id*. (quoting *Navellier v. Sletten* 106 Cal. App. 4th 763, 770 (Cal. Ct. App. 2003)).

Plaintiff alleges that Defendants made statements that she was "in violation of her ethical duties, as an attorney, regarding conflicts of interests," and the statements "impugned [her] reputation in her profession, and the statements were false." SAC (dkt. 57-1) at 43. In her Opposition, Plaintiff identifies the allegedly defamatory statements as "Defendants' actions of filing motions to disqualify and a State Bar complaint . . . ." Pl.'s Opp. (dkt. 63) at 21. Defendant County makes three arguments as to why Plaintiff fails to allege a claim for defamation under California law. First, Defendant County argues that the motions to disqualify and the state bar complaint are not factual statements because a communication expressing the belief of the existence of a conflict of interest or unsuccessful job performance are not capable of being proven true or false. Def.'s Mot. (dkt. 61) at 28-29. Second, it asserts that the motions and state bar complaint are immune from suit under the litigation privilege as publications occurring in judicial and quasi-judicial proceedings. *Id*. at 29-30. Finally, Defendant County argues that the allegedly defamatory statements were communicative acts, as opposed to non-privileged, non-communicative acts. *Id*. at 30.

In her Opposition, Plaintiff argues against an immunity defense that Defendant County did not raise. Pl.'s Opp. (dkt. 63) at 21. Next, Plaintiff argues that Defendants representations in the motions and state bar complaint were false because Defendant Blanck had admitted there was no conflict of interest in the first instance. *Id*. at 21. She then argues that state law litigation privilege does not apply because the motions represented noncommunicative conduct based on the "preceding violations of Plaintiff's civil rights and retaliation," and the motions were an attempt to cover up "their prior unlawful conduct." *Id*. at 22. Finally, Plaintiff asserts that Defendants' actions constituted malicious prosecution, and thus, are not shielded by litigation privilege. *Id*.

The court will begin by noting that Plaintiff did not identify with specificity which statements were allegedly defamatory in her SAC. Rather, Plaintiff identifies the challenged

statements in her Opposition. Turning to Defendant County's argument that the statements are shielded by litigation privilege, the preliminary question is whether the motions to disqualify and the state bar complaint were communicative or noncommunicative conduct. To answer that question, the first step is to identify the alleged injury. Plaintiff's alleged injury is that Defendants harmed her professional reputation. Next, the court must ask whether Plaintiff's alleged injury "resulted from an act that was communicative in its essential nature." *Rusheen*, 37 Cal. 4th at 1058. In *Rusheen*, a communicative act (filing a false proof of service to obtain judgment) was the predicate act that led to the challenged, noncommunicative act (engaging in post-judgment collection activities), and, based on this causal relationship, the court held that the "privilege extends to those noncommunicative actions which are necessarily related to that communicative act." *Id*. at 1052.

Plaintiff misconstrues the standard. Plaintiff challenges communicative acts (filing motions in a dependency proceeding and a state bar complaint) and argues that these acts are not communicative because the predicate acts upon which the filings were based were noncommunicative (interfering with her civil rights and retaliating against her). Plaintiff puts the cart before the horse. Even if the motions and complaint were based on those noncommunicative acts, that does not change the fact that the motions and complaint were quintessential communicative acts in judicial and quasi-judicial proceedings. *See Select Portfolio Servicing v. Valentino*, 875 F. Supp. 2d 975, 989 (N.D. Cal. 2012) (describing the fourth step of the litigation privilege analysis and including "a document filed with the court, a letter between counsel or an oral statement" as examples of a communicative act).

After establishing that the motions to disqualify and the state bar complaint were communicative acts, the court applies the four-step *Silberg* test to determine whether the litigation privilege applies. First, the motions and state bar complaint occurred in the context of judicial and quasi-judicial proceedings – dependency court and the initiation of state bar disciplinary proceedings. Second, Defendant County was an authorized participant in the dependency proceedings because it represented CWS, and Defendant Blanck was an interested party to the state bar complaint as a member of the bar purportedly seeking to uphold professional standards.

The purpose of the motions and state bar complaint were made to achieve the objectives associated with those communications – Plaintiff's disqualification from dependency cases in which she had an alleged conflict of interest and to complain of conduct perceived to violate ethical duties or competency requirements of attorneys. It is of no consequence if the motions were made without a good faith belief in their validity (i.e. filed for a retaliatory motive). *See Gamble,* 348 F. Supp. 3d at 1029 ("[T]he litigation privilege applies even where the communications at issue are alleged to be false or pretextual.") (citing *Gallanis-Politis v. Medina*, 152 Cal. App. 4th 600, 604 (Cal. Ct. App. 2007)). Finally, the motions and state bar complaint had "some connection or logical relation to the action" in which the respective communications were made because the documents were submitted to judicial and quasi-judicial bodies that were tasked with resolving the matters contained in those documents. Additionally, given the broad scope of the privilege and the strong presumption of its applicability, the motions to disqualify and the state bar complaint are privileged, and thus, Plaintiff's claim for defamation fails. *Holden*, 2016 WL 3938950, at *5. As such, the court does not go on to address the issue of whether the statements constituted opinion or false assertions of fact because that would not save Plaintiff's claim. Accordingly, Plaintiff's defamation claim is due to be dismissed.

Claim 10 – Intentional Interference with Contractual Relations

"To state a claim for intentional interference with contractual relations, a plaintiff must allege: '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages.'" *Fluidigm Corp. v. IONpath, Inc.*, No. 19-cv-05639-WHA, 2020 WL 408988, at *2 (N.D. Cal. Jan. 24, 2020) (quoting *PG&E v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (Cal. 1990)). To satisfy the fourth element, a plaintiff may allege "actual or inevitable breach of contract" or that "plaintiff's performance is made more costly or more burdensome" by defendant's acts. *Id*. (internal quotation marks omitted). It is not sufficient to state that the defendant encouraged a breach or disruption to the contract. *Id*. Rather, a plaintiff must allege that the defendant's conduct resulted in some added cost, burden, or breach of plaintiff's contract with

United States District Court
Northern District of California

a third party. *See id*. (finding that the plaintiff failed to adequately allege that any of its customers breached their contracts with plaintiff or that plaintiff suffered added cost to perform the contracts); *AlterG, Inc. v. Boost Treadmills LLC*, No. 18-cv-07568-EMC, 2019 WL 4221599, at *13 (N.D. Cal. Sept. 5, 2019) (holding that the plaintiff sufficiently alleged actual disruption of the contractual relationship because defendants produced a competing product by inducing the party to a confidentiality agreement with the plaintiff to divulge confidential information about plaintiff's product); *Coventry First LLC v. John Hancock Life Ins. Co. USA*, No. 11-cv-01785-SJO (EX), 2011 WL 13218033, at *6 (C.D. Cal. Aug. 29, 2011) (denying the defendant's motion to dismiss the intentional interference with contract claim because the plaintiff successfully alleged that the defendant's conduct resulted in the third party's inability to perform its obligation to plaintiff under the contract).

Plaintiff alleges that Defendants intentionally interfered with her "contract with Humboldt County Superior Court to represent parents and children in juvenile dependency matters." SAC (dkt. 57-1) at 45. Specifically, she alleges that the motions to disqualify her from cases – even cases that did not exist when she worked for Defendant County – before the dependency court and the "false/inaccurate complaint to the California State Bar" disrupted her ability to fulfill her contract. *Id*. Factual allegations related to her contract with the superior court are as follows: Plaintiff was informed of the available position and advised to seek a waiver of potential conflicts of interest from the County; Plaintiff learned through the Executive Director of Legal Services in Humboldt County that the County conditioned a waiver of conflicts on Plaintiff's agreement to release any claims that she may have against the County; Plaintiff refused to accept the conditional waiver of conflicts of interest; Plaintiff ultimately obtained the contract with the superior court; Defendants made written and oral motions to disqualify her from all of her assigned cases; Plaintiff was required to discuss the basis of the motions in juvenile court and with her clients; the motions were ultimately resolved without court intervention; and, Defendant Blanck filed a state bar complaint alleging that Plaintiff violated her ethical duties and unsuccessfully performed job duties. *Id*. at 20-24.

Defendant County argues that Plaintiff fails to state a claim for intentional interference

1 with contractual relations because there was "no actual breach or disruption of the contractual

2 relationship." Def.'s Mot. (dkt. 61) at 31. Specifically, it points to Plaintiff's allegations that the

3 motions were settled without court intervention, and that she did not allege that the "mere filing

4 caused the superior court to suspend or limit her assignments, or that she lost fees as a result." *Id.*

5 at 30-31. Instead, Plaintiff alleges that she would have lost fees if the motions were granted. *Id.*

6 Additionally, Defendant argues that Plaintiff fails to allege whether the Superior Court had any

7 knowledge of the state bar complaint. *Id.* at 30. Defendant also argues that the claim fails because

8 it is based on the same publications that are shielded by the California litigation privilege under

9 Cal. Civ. Code § 47(b). *Id.* at 31.

10       Plaintiff has failed to adequately allege actual breach or disruption of the contract with the

11 superior court. Plaintiff does not allege that she did not receive assignments to dependency cases,

12 or that the contract was terminated, or that she incurred loss of wages due to the motions to

13 disqualify or the state bar complaint. Instead Plaintiff alleges that "had [she] been disqualified

14 from cases . . . it would have meant she would not be paid and would not be able to continue in her

15 contracted position . . . ." SAC (dkt. 57-1) at 23. The mere possibility of actual breach or

16 disruption is not sufficient to sustain an intentional interference with contract claim, and it is

17 "speculation undeserving of the presumption of truth." *Fluidigm*, 2020 WL 408988, at *2.

18 Additionally, the conduct alleged to have interfered with Plaintiff's contract is protected by the

19 litigation privilege as stated above. Therefore, Plaintiff has failed to adequately allege a claim for

20 intentional interference of contract because there are no allegations of actual breach or disruption

21 of her contract with Humboldt County superior court and the publications are shielded by

22 litigation privilege. Accordingly, Plaintiff's claim for intentional interference with contractual

23 relations is due to be dismissed.

24 <u>Claims 11 & 12 – Intentional and Negligent Infliction of Emotional Distress</u>

25       The California Workers' Compensation Act ("WCA") provides the exclusive remedy for

26 injuries occurring during the normal course of employment. *See* Cal. Lab. Code §§ 3600(a),

27 3602(a); *see also Miklosky v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (Cal. 2008).

28 "Nonconsensual termination of an employment relationship is . . . considered a normal and

United States District Court<br>Northern District of California

1   inherent part of employment." *Shoemaker v. Myers*, 52 Cal. 3d 1, 18 (Cal. 1990). The are two

2   general exceptions from the exclusive remedy doctrine: 1) where the employer's conduct

3   "contravenes fundamental public policy," or 2) where the employer's conduct exposes the

4   employee to risks in excess of those "inherent in the employment relationship." *See Reef v. Jani-*

5   *King of California, Inc.*, No. 17-cv-06640-JCS, 2018 WL 707560, at *5 (N.D. Cal. Feb. 5, 2018)

6   (quoting *Miklosky*, 44 Cal. 4th at 902). If neither exception applies, the "'employee's emotional

7   distress injuries are subsumed under the exclusive remedy provisions of workers' compensation.'"

8   *Miklosky*, 44 Cal. 4th at 902 (quoting *Livitsanos v. Superior Court, supra,* 2 Cal. 4th 744, 754

9   (Cal. 1992)). Mere incorporation of allegations of a separate claim (e.g., unlawful retaliation or

10  wrongful termination) that may independently fall "outside the exclusivity doctrine based on the

11  public policy exception" does not extend the exception to more general tort claims like intentional

12  or negligent infliction of emotional distress. *Reef*, 2018 WL 707560, at *5; *see Jordan v.*

13  *Wonderful Citrus Packing LLC*, No. 1:18-cv-0401-AWI-SAB, 2018 WL 2229241, at *3 (E.D. Cal.

14  May 15, 2018).

15      Plaintiff states, in a conclusory fashion, that Defendants' conduct caused her to suffer

16  emotional distress. SAC (dkt. 57-1) at 45-47. Without specific allegations identifying what

17  conduct caused her emotional distress, Defendant County and the court are left to assume that

18  Plaintiff asserts all of the alleged conduct caused her emotional distress. In its Motion, Defendant

19  County bifurcates the alleged conduct into "pre-termination acts" and "post-termination

20  publications." Def.'s Mot. (dkt. 61) at 31. For the former category, Defendant County argues that

21  the exclusive remedy doctrine applies. *Id*. at 31-32. It does. Plaintiff has not alleged that an

22  exception – either public policy or exposure to excessive risk – applies to her intentional and

23  negligent infliction of emotional distress claims. In her Opposition, Plaintiff wholly ignores the

24  issue. *See generally* Pl.'s Opp. (dkt. 63). As stated above, incorporation of a claim that may, on its

25  own, fall outside the exclusive remedy doctrine does not bring a more general tort claim within the

26  exception. Regarding the post-termination publications, the court has found that the litigation

27  privilege as codified in Cal. Civ. Code § 47(b) applies to the motions and state bar complaint.

28  Thus, Plaintiff's claims for intentional and negligent infliction of emotional distress are subject to

the exclusive remedy doctrine and litigation privilege, and are due to be dismissed.

## CONCLUSION

For the reasons stated above, Defendant County's motion to dismiss (dkt. 61) is **GRANTED**. The court finds that Plaintiff has failed to allege a basis for municipal liability to sustain Claims 1-6. Plaintiff's state law Claims 7, 9 through 12 also fail, and the court declines to exercise supplemental jurisdiction over Claim-8.

Accordingly, it is hereby **ORDERED** that the claims against Defendant County shall be dismissed.

**IT IS SO ORDERED.**

Dated: August 4, 2020

_____
ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California