**"REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED"**

1  
ELISA J. STEWART (SBN: 219557)
2  
WENDY E. MUSELL (SBN: 203507)
STEWART & MUSELL, L.L.P.
3  
2200 Powell Street, Suite 440
Emeryville, CA 94608
4  
Telephone: (415) 593-0083
Facsimile: (415) 520-0920
5  
wmusell@stewartandmusell.com
6  
estewart@stewartandmusell.com

7

8  
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

9

10  
DEBRA AVENMARG,            ) Case No.  1:19-cv-05891-RMI
                          )
11  
        Plaintiff,        ) **SECOND AMENDED COMPLAINT FOR**
                          ) **DAMAGES AND DECLARATORY AND**
12  
    v.                    ) **INJUNCTIVE RELIEF**
                          )
13  
HUMBOLDT COUNTY, JEFFREY  ) **DEMAND FOR JURY TRIAL**
BLANCK, and DOES ONE THROUGH )
14  
FIFTY, inclusive          )
        Defendants        ) **1. Invasion of Privacy: U.S. Constitution;**
15                        ) **2. Invasion of Privacy: U.S. Constitution;**
                          ) **3. 42 U.S.C. § 1983 [retaliation]**
16                        ) **4. 42 U.S.C. § 1983 [right to petition]**
                          ) **5. 42 U.S.C. § 1983 [familial relations]**
17                        ) **6. 42 U.S.C. § 1983 [unconst. Govt. policy]**
                          ) **7. Violation of California Labor Code §**
18                        ) **1102.5**
                          ) **8. Invasion of Privacy: California**
19                        ) **Constitution, Art. 1, §1**
                          ) **9. Defamation: California Civil Code § 43**
20                        ) **10. Intentional Interference with**
                          ) **Contractual Relations**
21                        ) **11.  Intentional Infliction of Emotional**
                          ) **Distress**
22                        ) **12. Negligent Infliction of Emotional**
                          ) **Distress**
23                        )
                          )
24                        )
                          )
25                        )
                          )
26                        ) Complaint Filed:  9/20/19
27  _____ Trial Date:

28

**"REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED"**

PLAINTIFF DEBRA AVENMARG by seeking claims for relief against HUMBOLDT COUNTY, JEFFREY BLANCK, and DOES ONE THROUGH FIFTY, herein alleges:

## INTRODUCTION

1. This action is brought by Plaintiff DEBRA AVENMARG (hereinafter "PLAINTIFF' or "AVENMARG"), who was employed by DEFENDANT HUMBOLDT COUNTY (hereinafter "COUNTY"), for invasion of privacy, defamation, intentional interference with contractual relations and retaliation, as set forth herein.

2. DEFENDANTS interfered with PLAINTIFF'S constitutionally protected right to privacy, among other rights, by demanding that she make an untenable choice between career and her family, expressly stating that if she did not stop participating in the care of the child in need, she would be fired.

3. JEFFREY BLANCK (hereinafter "BLANCK") and DOES 1-50 falsely accused PLAINTIFF of violating her ethical duties as an attorney.

4. DEFENDANTS terminated PLAINTIFF from her position.

5. After PLAINTIFF'S termination, DEFENDANTS continued to interfere with PLAINTIFF'S subsequent employment by filing, in bad faith, motions to disqualify her as legal counsel in retribution.

6. DEFENDANTS continued to retaliate against PLAINTIFF, by submitting to the California State Bar, an unfounded allegation that PLAINTIFF violated ethical rules regarding a conflict of interest.

7. DEFENDANTS' treatment of PLAINTIFF constituted a continuing pattern of illegal conduct which caused great harm to PLAINTIFF.

## JURISDICTION AND VENUE

8. This court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1343(4). This action arises under federal law: Civil Rights Act of 1871, 42 U.S.C. § 1983, et seq., and the United States Constitution.

9. Venue is proper in the Northern District of California pursuant to 28 U.S.C. 1391(e), because the unlawful practices alleged in this Second Amended Complaint occurred in

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

the Northern District of California.

## INTRADISTRICT ASSIGNMENT

10.     Assignment of this action to the Eureka Division of this Court is proper pursuant to Local Rule 3-2(c) and (d) because the events giving rise to this action occurred in Humboldt County, California.

## PARTIES

11.     PLAINTIFF is an adult female. She was employed by HUMBOLDT COUNTY in Humboldt, California, as a Deputy County Counsel.

12.     DEFENDANT COUNTY is a public entity organized and existing under the laws of the State of California.  The County Counsel's Office is a duly formed agency of the County. DEFENDANT COUNTY ratified DEFENDANT BLANCK'S actions when it received PLAINTIFF'S claims for damages, correspondence summarizing PLAINTIFF'S claims to Human Resources and correspondence provided to DEFENDANT COUNTY'S investigator assigned to investigate PLAINTIFF'S claims and thereafter rejected and/or denied PLAINTIFF'S claims.

13.     DEFENDANT BLANCK is the County Counsel for DEFENDANT COUNTY and is the County's final policymaker for establishing practices and procedures to address potential and actual conflicts within the Office of the County Counsel.

14.     The true names or capacities of, whether individual, corporate, associate, subsidiary or otherwise, of DEFENDANTS DOES 1 to DOE 50 are unknown to PLAINTIFF, who therefore sues such DEFENDANTS under fictitious names, and will amend this Second Amended Complaint to show their true names and capacities when ascertained. PLAINTIFF is informed and believes and thereon alleges that each of the DEFENDANTS designated as DOE 1-50, is negligently responsible in some manner for the events and happenings referred to, and thereby proximately caused injuries and damages to PLAINTIFF as alleged herein.

15.     At all times mentioned herein, PLAINTIFF is informed and believes and thereon alleges that each and every DEFENDANT was the agent, employee, and/or servant of every other DEFENDANT and performed the acts complained of herein in the course and scope of

such agency, servitude, and/or employment, and acted with the consent, ratification, permission, knowledge, and/or authorization of each of the remaining DEFENDANTS. All of the acts and/or conduct of each DEFENDANT alleged in the causes of action into which this paragraph is incorporated by reference were consented to, ratified, approved, and/or authorized by the officers and/or managing agents of every other DEFENDANT. DEFENDANTS are sued both in their own right and on the basis of respondeat superior, where relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16.     In accordance with the appropriate regulations, codes, and statutes, including but not limited to the Government Code, PLAINTIFF has exhausted any required administrative remedies.

17.     In addition, PLAINTIFF has participated in DEFENDANTS internal investigation conducted in response to PLAINTIFF'S claims.

18.     On or about October 8, 2018, Plaintiff's claim for damages was served upon DEFENDANT COUNTY as required under California Government Code §§ 905 and 915.  The claim included the allegations raised in Plaintiff's Second Amended Complaint with the exception of allegations relevant to the complaint made to the State Bar.

19.     On or about October 8, 2018, PLAINTIFF, through counsel, provided a summary of the factual allegations to Ms. Karen Kramer of Kramer Workplace Investigations, in response to a request for that information relevant to a workplace investigation she was conducting at the behest of DEFENDANT COUNTY.

20.     On or about November 2, 2018, Humboldt County's Human Resources, Risk Management Services Department acknowledged receipt of Plaintiff's claim for damages, advised that "based on the contents of the claim," the County was conducting an investigation.

21.     On or about November 6, 2018, PLAINTIFF, through counsel, advised DEFENDANT COUNTY of the potential claims and factual allegations.

22.     On or about March 21, 2019, Humboldt County's Human Resources, Risk Management Services issued a notice that Plaintiff's October 11, 2018 claim for damages was rejected by Risk Management acting on behalf of the Board of Supervisors.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**"REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED"**

23.     PLAINTIFF's Complaint was filed within six (6) months from the date of DEFENDANT COUNTY'S Notice of Rejection.

24.     On or about May 17, 2019, PLAINTIFF received notice that DEFENDANT BLANCK had complained to the State Bar of California, alleging that she violated ethical rules.

25.     On or about September 20, 2019, PLAINTIFF submitted another claim for damages inclusive of that new information.  The claim included the allegations raised in Plaintiff's Second Amended Complaint including allegations relevant to the complaint made to the State Bar.

26.     On or about September 25, 2019, Humboldt County's Human Resources, Risk Management Services Department acknowledged receipt of Plaintiff's claim for damages, advised that "based on the contents of the claim," the County was conducting an investigation.

27.     The Claim for Damages was denied on October 8, 2019.  Plaintiff's Complaint and Second Amended Complaint and Demand for Jury Trial was filed within six (6) months of the rejection by Defendants.

28.     All of the acts alleged herein and in the tort claims presented to DEFENDANT COUNTY were in the nature of a continuing violation and/or continuing torts.  All of the misconduct alleged herein was part of the same continuous retaliatory and invasive practices, and at least some of the misconduct occurred within the accrual of this cause of action.

## FACTUAL ALLEGATIONS

**A.  Defendant Blanck:  County Counsel and Final Policy Maker**

29.     The County Counsel is appointed by the Board of Supervisors of DEFENDANT COUNTY.  At all relevant times herein, DEFENDANT BLANCK was DEFENDANT COUNTY's appointed County Counsel.

30.     Humboldt's County Counsel Office was established by Humboldt County Board of Supervisor's Resolution No. 931, adopted in 1956.

31.     County Counsel Office staff, including DEFENDANT BLANCK, are employees

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

of DEFENDANT COUNTY.

32.     At all times relevant herein, all attorneys working within the County Counsel's Office, including DEFENDANT BLANCK, were required to comply with the provisions of the California State Bar Act.  Cal. Bus. & Prof. Code §§ 6000 *et seq*.  The duties of attorneys are outlined in California Business and Prof. Code § 6068, including but not limited to those provisions relevant to complying with disciplinary investigations, disciplinary proceedings, agreements in lieu of prosecution and reporting requirements of the State Bar of California.

33.     For attorneys, allegations of violations of the California Rules of Professional Conduct can serve as the basis for disciplinary investigations and proceedings.  The purpose and function of the California Rules of Professional Conduct are to "regulate professional conduct of members of the State Bar through discipline."  Cal. Rules of Professional Conduct, Rule 1.100(A) (Effective from Sept. 14, 1992 to October 31, 2018).

34.     The California Rules of Professional Conduct "are binding upon all licensees of the State Bar."  Bus. & Prof. Code §6077.  DEFENDANT BLANCK was and is a licensee of the State Bar.

35.     The California Rules of Professional Conduct include "the duty to supervise the work of subordinate attorney."  Cal. Rules of Professional Conduct, Rule 3.100, Discussion. (Effective from Sept. 14, 1992 to October 31, 2018).  The Rules were recently updated to codify existing case law on the duties of managerial and supervisory lawyers.  Cal. Rules of Professional Conduct, Rule 5.1. (Operative November 1, 2018.)  Rule 5.1 provides clarity regarding the duties of an attorney with managerial authority in a firm and that of an attorney with direct supervisory authority over an attorney.

36.     Attorneys with managerial authority are required to "make reasonable efforts to establish internal policies and procedures designed, for example, to detect and resolve conflicts of interest,…"  Cal. Rules of Professional Conduct, Rule 5.1(a), Comment. (Operative November 1, 2018.)  Although newly operative, the rule is based on existing California case law and is not a new requirement on attorneys with managerial authority.

37.     At all relevant times herein, DEFENDANT BLANCK was County Counsel for

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

DEFENDANTS and the attorney in the office with managerial authority.  As such, DEFENDANT BLANCK was responsible for setting policies, procedures and rules relevant to the identification, prevention and response to ethical conflicts arising during the course of dependency matters.

38.    At all relevant times herein, DEFENDANT BLANCK had direct supervisory authority over PLAINTIFF.

39.    At all times relevant herein, the Office of County Counsel provided legal services to Humboldt's Child Welfare Services Department ("CWS") for trials and appeals.  Staff and attorneys dedicated to these endeavors worked in the Child Welfare Service Unit of the County Counsel's Office.

40.    Humboldt's CWS was tasked with the investigation and intervention of child abuse and neglect in DEFENDANT COUNTY.  The County Counsel's Office represented CWS in state statutory based dependency proceedings.

41.    Potential and actual ethical conflicts arising during the course of such representation were addressed by policies and procedures created and managed by the County Counsel's Office, by its predecessor County Counsels and DEFENDANT BLANCK.  Such policies and procedures included screening off attorneys to avoid conflicts; sending the case to private counsel and/or transferring the case out of the county.  The establishment, maintenance and decision-making regarding conflicts was by operation of state law, delegated to the general operation of the County Counsel's Office.

42.    On or about June 29, 2017, DEFENDANT BLANCK evaluated PLAINTIFF'S performance as a Deputy County Counsel III, assigned to the Department of County Counsel from 2016 through June 2017.  He rated her performance as "outstanding" in nearly all categories with the exception of two where he designated her skills as "above average."  On the performance evaluation form, DEFENDANT BLANCK signed as the "appointing authority."

43.    On or about July 31, 2017, at the direction of DEFENDANT BLANCK, PLAINTIFF was promoted to Deputy County Counsel IV, Step A.  PLAINTIFF'S performance evaluation was identified as the basis warranting her promotion.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**"REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED"**

44.     On or about January 29, 2018, DEFENDANT BLANCK again reviewed PLAINTIFF'S performance.  The evaluation sets forth skills that are rated as outstanding, exceeds expectations, meets expectations, improvement needed, unsatisfactory and non-applicable.  In all applicable skills, DEFENDANT BLANCK rated PLAINTIFF as "outstanding."  Three identified "competencies" were to be rated as either meets expectations or improvement needed.  These competencies were listed as "Legal Ethics," Quantity of Work," and "Office Administrative Procedures."  In each of these competencies, DEFENDANT BLANCK rated PLAINTIFF as "meets expectations."

**B.  Constitutional Claims Arising During Plaintiff's Employment and Termination**

45.     On December 29, 2014, PLAINTIFF became employed with Humboldt County in the Office of County Counsel as Deputy County Counsel. PLAINTIFF was one of three attorneys assigned to provide legal services to CWS at the trial level.

46.     Shortly after commencing employment, on or about January 2015, PLAINTIFF noticed a confidential juvenile case in the Humboldt County Counsel office.  The name stood out because she recognized it as an extended family member, ███████████████████████ ██████ (hereinafter "GN").

47.     PLAINTIFF became involved with GN's family long before his birth and before her employment with DEFENDANT COUNTY.  GN's ██████████ befriended PLAINTIFF's ████ when PLAINTIFF was in ██████████.  What started as a friendship eventually blossomed into a romantic relationship and then marriage.  PLAINTIFF is very close with both her ██████████████████.  They are frequently in touch, visit each other's homes and socialize together.  PLAINTIFF has often assisted in the care of her ████████████████ children.

48.     PLAINTIFF learned about GN's impending birth initially from ████████.  PLAINTIFF was aware that the prospective parents were very young and at risk.

49.     After GN's birth, PLAINTIFF's family, including her extended family, often discussed concerns relevant to GN's health, safety and welfare.  Various family members stepped in to provide care.  There were plans for GN to be cared for by certain family members

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

but there was no authority to ensure consistent placement and thus, GN was returned to the care of his biological parents.

50.     On or about July of 2014, PLAINTIFF met GN for the first time at a family baby shower.  GN was brought to the event by another family member.  He was approximately seven (7) or eight (8) months old at the time.

51.     Shortly after PLAINTIFF commenced her employment with DEFENDANT COUNTY and she saw GN's name on the list of Child Welfare cases in the county. She immediately brought the matter to the attention of the Humboldt County Counsel legal secretary, Eliza Onate and informed her that she may have an apparent conflict. The legal secretary noted the conflict for the office, marked the file showing PLAINTIFF's connection with the juvenile and instructed PLAINTIFF was not to receive any information about the case.  On that same day, PLAINTIFF also advised the Deputy County Counsel assigned to the case of the apparent conflict, so that he would not discuss the case with her.  The County Counsel's office made and approved the determination that there was an apparent legal conflict of interest.  In short, the County Counsel's office created a "firewall" and the Office departments' protocols, policies and procedures were followed related to legal conflicts of interest. PLAINTIFF was personally ethically screened from the case within County Counsel's Office.

52.     DEFENDANT BLANCK, as County Counsel, had final policy making authority as to the determination of, appropriate response, and course of action taken to address potential and actual conflicts within the office of the County Counsel.    Plaintiff is informed and believes and thereon alleges that DEFENDANT BLANCK approved of the actions taken by Defendants in this case related to determining whether Plaintiff had a conflict, the response to the conflict and the course of action to taken related to Plaintiff and her employment because of his determination that a conflict existed.

53.     On or about September 9, 2015, GN was detained and placed in foster care by CWS. At the time, GN was approximately twenty-one (21) months old. PLAINTIFF informed the Deputy County Counsel and the attorneys involved in the case that a family member, PLAINTIFF's ████████████████ were  requesting placement of the child and that they

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

should be aware of the sensitivity of the situation and that PLAINTIFF has a conflict on the case. PLAINTIFF informed Deputy Counsel and the attorneys that she should be treated as a non-related extended family member (NREFM).

54.     On or around the end of September or early October 2015, ██████████████ ████████████████████████████. PLAINTIFF'S family required assistance with the care of GN and PLAINTIFF obtained an approved modified schedule with the County Counsel's Office which allowed her to be present one day each week to provide care for GN until ██████ came home from work at approximately 9:30 pm.

55.     When PLAINTIFF initially began to spend time with GN, he exhibited a number of negative and/or unusual behaviors which were indicative of the treatment and/or environment which likely formed the basis for his removal from the home.

56.     During this time period, PLAINTIFF developed an affection for and clear bond with GN.  She prepared his meals, changed his diapers, played with him, went for walks and put him to bed.  She also worked on building language and other developmental skills.  He returned her affection and began to call her "Auntie Debra."

57.     GN's placement with PLAINTIFF's ██████████████ was problematic. The home was occupied by two children already and GN's interactions with one had grown hostile.

58.     In or around early December 2015, it was suggested by Child Welfare Services that GN be placed with PLAINTIFF.  The only other possible available placement options for GN would have been out of the county, far from his birth home and family members. PLAINTIFF took action to seek the appropriate approvals, with both the CWS and the County Counsel Office to become a foster parent to the juvenile.

59.     On or about December 11, 2015, PLAINTIFF was advised that she satisfied requirements of becoming a foster parent; however, a determination was being withheld while CWS discussed PLAINTIFF'S status as an employee with the County Counsel's Office which provided legal representation to CWS.

60.     Shortly thereafter and with County Counsel and CWS approval, GN began having

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

extended visits with PLAINTIFF.

61.     At around early November 2015, PLAINTIFF met with the Court Appointed Special Advocate (CASA) who was assigned to meet with GN weekly for the purpose of advocating on GN's behalf.   PLAINTIFF arranged for the CASA to continue meeting with the child on a weekly basis.

62.     On or about December 15, 2015, PLAINTIFF and her spouse submitted Livescan fingerprinting to be eligible to be considered for fostering with the County.  PLAINTIFF also attempted to make an appointment with CWS to finalize the paperwork to become the child's foster parent. However, she was informed by Assistant County Counsel that further discussions need to take place before PLAINTIFF can become the child's foster parent.

63.     On or about December 21, 2015, with approval from both the Humboldt County Counsel's Office and Humboldt County Child Welfare Services, PLAINTIFF became the foster parent for GN.  PLAINTIFF was advised by both agencies that her request for placement had been approved.

64.     Before the transition, PLAINTIFF met with GN's parent to learn about any special needs or preferences that PLAINTIFF was unaware of.  She also arranged for visits so that she and GN would stay connected to the parents.

65.     Shortly before Christmas, 2015, GN transitioned to PLAINTIFF's home.  GN was approximately twenty-five (25) months old at the time.  The bond between the two continued to grow.  GN began to call PLAINTIFF "Auntie mamma" and then just "Mamma."  GN would ride his tricycle when PLAINTIFF and her husband went for walks.  PLAINTIFF took him swimming and to gymnastics.  They read books together every night.   GN became attached to PLAINTIFF, following her around the house wanting to be involved in every activity, including household chores. He helped feed the cats, helped move laundry and look for sock matches after the clothes came out of the dryer.  GN would stand on a chair in the kitchen to help PLAINTIFF cook.  GN liked to be rolled up in a blanket and turned into a "burrito" with other toy ingredients included in the burrito, then carried around and delivered to PLAINTIFF's husband who would try to eat him.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

66.     GN thrived in the home provided by PLAINTIFF and her husband.  He went from being very delayed in speech to advanced for his age.  He progressed from being described as having difficulty with bonding to exhibiting strong bonding behaviors. His development was thriving under PLAINTIFF and her husband's care.

67.     Throughout GN's time living with PLAINTIFF she shared updates and photos of GN with family members.

68.     PLAINTIFF also kept the court overseeing the dependency matter updated on all facets of GN's progress and family interactions and visits.

69.     During this time, to ensure the efficacy of the ethical screenings in place, PLAINTIFF was advised by Assistant County Counsel that the County Counsel's Office further strengthened the firewall in the office that served to completely screen PLAINTIFF from accessing information about the case.

70.     On or about May 13, 2016, PLAINTIFF sought the assignment of a mentor, a support provided to other foster parents in the COUNTY.  PLAINTIFF located a local mentor who was willing to work with her.

71.     On or about May 24, 2016, PLAINTIFF's foster child's case was transferred from Humboldt County Counsel's Office to Del Norte County Counsel's office.  Due to the ethical screenings in place, PLAINTIFF was not informed of the reasoning for the transfer beyond it having something to do with the screening between her and the County Counsel Office in the case.

72.     On or about June 15, 2016, PLAINTIFF was advised, by Social Worker Supervisor of the Humboldt County Department of Health and Human Services, who is in charge of CWS' foster parent mentoring program in DEFENDANT COUNTY, that the potential mentor that PLAINTIFF connected with, could not be assigned to her and PLAINTIFF could not have a foster parent mentor from Humboldt because the matter had been transferred to Del Norte County.  PLAINTIFF was further advised that because she was employed with Humboldt County as a Deputy County Counsel that she could not attend any foster parent support groups in the County.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**"REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED"**

73.     On or about September 6, 2016 PLAINTIFF filed her first "Caregiver Information Form" (JV-290) with the court objecting to a proposed process for visitation made by GN's mother.

74.     On or about June 6, 2017, Del Norte County Counsel and Del Norte County CWS declined to continue overseeing PLAINTIFF's foster child's case and transferred the matter back to DEFENDANT COUNTY. Humboldt CWS then retained private outside counsel on GN's case rather than utilizing representation from the Humboldt County Counsel Office.

75.     On or about July of 2017, PLAINTIFF was advised by her employer, County Counsel's Office, that she must surrender her role as a foster parent for the child or be removed from her usual job duties and switch assignments with a newer attorney in the office who did not handle dependency cases, as an ethical screening measure.  PLAINTIFF opted to switch assignments and continue to be a foster parent.

76.     Also, at some point around this time, Assistant County Counsel recommended that PLAINTIFF apply for "de facto parent" status of her foster child and extended family member, and that she should seek an attorney in the proceedings. PLAINTIFF informed Assistant County Counsel, that she was not prepared to do so at that time.

77.     On or about August 9, 2017, the court was discussing with PLAINTIFF the possibility of transitioning GN to his parents. PLAINTIFF filed her second "Caregiver Information Form" (JV-290) regarding visitation and placement of GN.

78.     A month later, on or about September 9, 2017, CWS retained a different private attorney. The private counsel remained the private attorney, representing CWS related to GN's case until PLAINTIFF'S termination of employment.

79.     On or about September 27, 2017, PLAINTIFF again filed a third "Caregiver Information Form" (JV-290) this time requesting visitation with her foster child in anticipation of GN returning to his parents' care and the case remaining open with a Family Maintenance plan.  In addition, other members of PLAINTIFF'S family and extended family filed similar "Relative Information Forms" requesting visitation.

80.     On or about September 28, 2017, GN was returned to the care of his parents.   At

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

this time, GN was almost four (4) years old and had spent nearly half of his life in PLAINTIFF's care.  He had been calling PLAINTIFF "mamma" at the time he was returned to the care of his parents, indicating that GN considered PLAINTIFF in the role of primary maternal caregiver.

81.     PLAINTIFF'S request for visitation and the requests of the other relatives were not formally addressed by the Court but PLAINTIFF was permitted to visit GN via an informal agreement with the frequency and duration guided by direction of GN's therapist.

82.     When PLAINTIFF saw GN at his fourth (4th) birthday party shortly after the transition to GN being returned to the care of his parents, GN clung to her throughout the party.  He showed her his birthday presents and wanted to bring them to PLAINTIFF's home.

83.     PLAINTIFF's visits with GN were often a family affair, ███████████████ ████████████████████████████████████████████████ ████████.  PLAINTIFF also shared photos of the visits with other family members or connected with them during visits over Skype.

84.     On or about October 16, 2017, PLAINTIFF was advised by her employer, County Counsel's Office, that they were short-staffed and would require her to take dependency cases.  PLAINTIFF was provided with two options:  CWS appeals in addition to her current assignments or return to her previous CWS assignment.  PLAINTIFF selected CWS appeals because the foster care case she was involved in remained open at that time.

85.     On or about October 23, 2017, PLAINTIFF was advised by DEFENDANT BLANCK and Assistant County Counsel that she will be reassigned to CWS to take dependency cases and also to continue working on an appeal.  DEFENDANT BLANCK and Assistant County Counsel told PLAINTIFF that the County Counsel's Office never had an actual conflict as a result of her role as a foster parent and as a Deputy County Counsel assigned to dependency cases, but that they had undertaken "cautionary" measures.  They further advised that that if PLAINTIFF'S foster child came back into her care, that private counsel (also commonly referred to as conflicts counsel) for Humboldt Child Welfare Services, was prepared to argue that there was no actual conflict. PLAINTIFF inquired why the reassignment of PLAINTIFF's duties was removed in the first place given that the County Counsel has determined there was no actual

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

conflict, and they advised PLAINTIFF that in hindsight, they would have done things differently. When PLAINTIFF asked what to do about the appeal that she started working on, she was informed that she was expected to do both. PLAINTIFF expressed her concern that she would not be able to juggle both reassignment to a full dependency case load and the appeal. DEFENDANTS dismissed her concerns.

86.     On or about October 30, 2017, PLAINTIFF was returned to her assignments with CWS by DEFENDANTS.

87.     On or about November 2017, County Counsel took back the appeal, due to the clear impracticability of assigning a full CWS workload and an appeal to a single Deputy County Counsel.

88.     On or about December of 2017, PLAINTIFF received a call from ████████ ████████████████████████████████████████████████████████████ ██████████████████ .  PLAINTIFF had a previously scheduled visit with GN and went to pick him up.  GN was in PLAINTIFF's care when ██████████████ .

89.     On or about December of 2017, GN was again detained and placement was transferred to GN's other parent.  The result for PLAINTIFF was that she no longer had visitation via an informal agreement. Assistant County Counsel directed PLAINTIFF to reassign six of her cases to the other CWS Deputy County Counsels due to assignment of a specific social worker to GN's case and that particular social worker's current involvement in those six cases.

90.     From December of 2017 until May of 2018, PLAINTIFF repeatedly reached out to secure visitation with GN.  She was unsuccessful.

91.     On or about May 29, 2018, PLAINTIFF filed a motion for "De Facto Parent Status" and JV-180 form to request visitation for herself and relatives and to provide the Court with information about the child, relatives, NREFMs, and the parents. This was PLAINTIFF'S fourth time filing in GN's case during the term of her employment with the County.

92.     Under California Rule of Court, Rule 5.502(10), to succeed in a de facto motion, PLAINTIFF would have to prove that she and her husband were persons who have "assumed, on a day-to-day basis, the role of the parent, fulfilling both the child's physical and psychological

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

need for care and affection, and who [have] assumed that role for a substantial period." Relevant

factors include: Whether the child has psychologically bonded with the applicant; whether the

applicant has acted as a parent on a day to day basis for a substantial amount of time; whether the

applicant has important information about the child that the other parties in the case cannot

provide to the Court; whether the applicant has regularly attended juvenile court hearings.

93.     On or about May 29, 2018, PLAINTIFF was called into the office of County

Counsel with Assistant County Counsel present. DEFENDANT BLANCK and Assistant County

Counsel told PLAINTIFF that they had discussed with the director of Humboldt Child Welfare

Services PLAINTIFF'S motions filed in GN's case.  Their position was that PLAINTIFF would

be potentially adverse to the County Counsel if given standing in the case.  This came as a

surprise to PLAINTIFF because she had already been filing "Caregiver Information Forms"

without any issue, and it was Assistant County Counsel that previously encouraged PLAINTIFF

to file for "de facto parent" status.  She had also been previously informed by BLANCK and

Assistant County Counsel there was no conflicts with regard to her foster parent role.  BLANCK

and Assistant County Counsel inquired whether PLAINTIFF intended to appeal if she lost the

motion and PLAINTIFF responded in the affirmative. DEFENDANT BLANCK told

PLAINTIFF that such action was directly adverse to her client, DEFENDANT COUNTY, and

would require her client, DEFENDANT COUNTY, to defend against the motion and any

subsequent appeal.  PLAINTIFF was advised in the meeting to call the State Bar ethics hotline.

During the meeting, DEFENDANT BLANCK and Assistant County Counsel encouraged

PLAINTIFF to withdraw her motions filed in GN's case.

94.     Acting to withdraw the motions  would have meant that PLAINTIFF would

abandon her efforts to serve as a de facto parent to GN;  abandon her efforts to associate with

and care for the juvenile family member in need; and abandon her efforts to provide information

and assistance to the court in determining GN's best interests and needs, as she had previously

provided to the court throughout his case. Further, many family members relied on PLAINTIFF

to provide them with visitation and the ability to associate with GN. Given PLAINTIFF'S

relationship with GN, the time she had spent with him, the bonds she had built with him and the

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

knowledge she had to contribute, such an abandonment was untenable and inconsistent with the instructions of GN's therapist regarding his best interests and healthy development. After the meeting, PLAINTIFF left a message for the State Bar ethics hotline, as she had been directed.

95.     On or about May 30, 2018, PLAINTIFF received and returned a phone call from the State Bar ethics hotline.  She described the potential ethical situation.  The State Bar hotline responder could not provide any specific citations for her situation.  PLAINTIFF was not provided clear guidance aside from confirmation that the previous ethical screens were significant, and that the matter would benefit from a proceeding before a judge who could make a ruling after presented with all of the facts.  PLAINTIFF conveyed this information to Assistant County Counsel only, who responded that she would not discuss the matter without DEFENDANT BLANCK present.

96.     On or about May 31, 2018, PLAINTIFF was again called into DEFENDANT BLANCK's office with Assistant County Counsel present.  DEFENDANT BLANCK told PLAINTIFF that she would need to withdraw the motion for de facto parent status and motion for visitation or leave her employment with DEFENDANT COUNTY.  PLAINTIFF was given until the following Monday to make a decision.  PLAINTIFF said that she was not planning on withdrawing her motion or withdrawing from her employment. Assistant County Counsel told PLAINTIFF to think about it for a few days.  Assistant County Counsel then told PLAINTIFF that the County Counsel's Office had a new policy that Deputy County Counsels could not take placement of foster children in Humboldt County.  The purpose of the rule was to eliminate potential and/or actual conflicts of this nature from occurring.  This meant that even if PLAINTIFF qualified for placement for GN, as she had in the past, she would nonetheless be ineligible due to her employment with DEFENDANT COUNTY.  DEFENDANT COUNTY was effectively preventing PLAINTIFF from being able to care for her former foster child and extended family member, despite the fact that the juvenile had been living with her for almost two years and despite the fact that she may be the only familiar person to him willing to take him. It appeared the policy was created specifically to fire Plaintiff and to limit her access to the court system, if she insisted on being a foster parent to her extended family member.

97.     After this meeting, PLAINTIFF conferred with a prior work colleague and based on this discussion, PLAINTIFF reasonably concluded that DEFENDANTS demand that she withdraw her motions, resign or be fired was unlawful.

98.     On Monday June 4, 2018, PLAINTIFF was again called into speak with DEFENDANT BLANCK and Assistant County Counsel.  PLAINTIFF reported to the County Counsel that she would neither withdraw her motion nor resign from her employment.  Her position was a result of her reasonable conclusion that DEFENDANTS demands were unlawful. PLAINTIFF was then terminated from her employment as a Deputy County Counsel.  She was instructed to make an appointment to clean out her office after hours and to immediately leave the premises.  PLAINTIFF did not receive payment of wages for the date she was fired.

**C.  Plaintiff's Speech**

98.     On or about Tuesday, June 19, 2018, PLAINTIFF received notice that a court date was scheduled on Friday, June 22, 2018 to be heard on PLAINTIFF's motion for de facto parent status in GN's case during the ongoing trial in the case that was taking place.  The matter was already on calendar to conduct a contested hearing to determine whether the matter should be closed.

99.     The welfare of a community's children is a matter of public concern.  Humboldt County established an agency dedicated to ensuring the physical safety and addressing the needs of at-risk minors.  Court intervention, supervision and oversight of the agency's role in relation to at-risk minors is critical in ensuring an appropriate balance in addressing the needs of minors, the rights of the parties involved and the intervention of the government into the lives of the residents in the County.  The courts cannot competently balance these interests without the participation of individuals with relevant knowledge, experience and expertise.

100.     PLAINTIFF'S petitioning, participation and speech on issues relevant to GN, given her role as a member of GN's family, her role as a foster parent and her interactions and inclusion of other members of GN's family, although made in the private setting of a juvenile court room nonetheless touched on matters of public concern.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

101.     PLAINTIFF contacted paternal and maternal relatives to come to court with her that day to establish a showing that GN's family members supported a finding that PLAINTIFF qualified as a de facto parent of GN and these family members were also relying on PLAINTIFF to get a visitation order if the case closed so they could maintain a connection to GN.

102.     On or about Friday, June 22, 2018, PLAINTIFF, her husband and eleven additional family members including extended family members showed up in court despite the short notice of two and half days' notice.

103.     The motion for de facto parent status was presented with information presented by PLAINTIFF and supported by GN's counsel and the father.  GN's counsel represented that GN continued to ask for PLAINTIFF and expressed that he wanted to see PLAINTIFF.  Mother opposed the motion. Child Welfare services took a neutral position.   The court granted PLAINTIFF's motion naming PLAINTIFF and her husband as defacto parents.

104.     As defacto parents, under rule 5.534(e) of the California Rules of Court, PLAINTIFF and her husband had the following rights:

105.     To be present at dependency proceedings (juvenile matters are confidential and held in a closed courtroom where persons who are not parties must get the judge's approval to remain in the courtroom).

Receive notice of hearings.

To be represented by a lawyer if the defacto parents chose to hire one, or the court may exercise discretion to appoint a lawyer at no cost.

To participate as a party in any hearing and present views and evidence, cross-examine witnesses to promote the best interests of the child.

Participate in decisions regarding the child's care and placement.

106.     PLAINTIFF, then participated in the remaining days of trial in GN's matter. At the conclusion of the contested hearing, the Judge gave a tentative and supported closing out the case with primary custody to the mother. PLAINTIFF was granted visitation with GN permitting her discretion to include other family members in the visits.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### D.  Defendants Post Termination Conduct

107.    On or about June 5, 2018, Lead Attorney for the panel of court appointed counsel in dependency cases reached out to PLAINTIFF and informed her that there was a newly created full time position on the panel and she would be eligible to obtain a contract with the court to join the panel of court appointed counsel in dependency cases and she recommended that PLAINTIFF should try to obtain a waiver of any potential conflicts from the County Counsel's Office.

108.    On or about June 7, 2018, PLAINTIFF sought a waiver from the County Counsel's Office to proceed with representation in dependency cases.  Assistant County Counsel response was encouraging, and she was advised that a response would be forthcoming.

109.    On or about June 8, 2018, PLAINTIFF sent an email correspondence to DEFENDANT'S Human Resources Director to preserve her appeal rights, if any, and to state that she believed she was wrongly terminated.  Shortly thereafter, Assistant County Counsel wrote to PLAINTIFF that she was made aware of the fact that PLAINTIFF filed a complaint regarding the COUNTY'S termination of her and based on that information Assistant County Counsel could no longer communicate to her about the waiver for the conflict of interest issue.

110.    On or about June 11 and 12, 2018, PLAINTIFF was required to explain the reason for her termination to the Executive Director of Dependency Legal Services in Humboldt County.  The Executive Director was the liaison between PLAINTIFF and the court for this information.  Thus, the basis for PLAINTIFF'S termination from DEFENDANTS would be further provided to the court for review in relation to a potential position with on the court appointment panel of dependency attorneys.

111.    On or about June 17, 2018, PLAINTIFF received a paycheck in the mail including pay for her last days worked and paying out vacation time.

112.    On or about June 19, 2018, the Executive Director of Dependency Legal Services of Humboldt County advised PLAINTIFF that he had spoken with Suzanne Solomon, outside legal counsel for DEFENDANT COUNTY.  He reported that Ms. Solomon said that DEFENDANT COUNTY would sign the waiver PLAINTIFF sought in order to obtain new

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

position as court appointed counsel in dependency matters if PLAINTIFF waived her claim against DEFENDANT COUNTY. The Executive Director of the dependency program told Ms. Solomon that the County's position was "heartless and ridiculous."

113.    DEFENDANT COUNTY'S position that the ethics waiver could be negotiated in exchange for a financial benefit, here the waiver of PLAINTIFF'S claims against the County, evidences an unconscionable disregard for the purpose of the Rules of Professional Conduct and the duties of attorneys. The Rules do not exist to serve as a tool of leverage over attorneys to exact waivers and submission.

114.    PLAINTIFF did not agree to waive her claims against DEFENDANT COUNTY and subsequently, DEFENDANT COUNTY, true to its threat, endeavored to disqualify PLAINTIFF from dependency cases she was appointed on and filed a complaint with the State Bar accusing PLAINTIFF of ethics violations.

115.    On or about July 01, 2018, notwithstanding the refusal of DEFENDANT COUNTY to execute and conflict waiver, the Superior Court of California, Humboldt County, through the Honorable Joyce D. Hinrichs, contracted with PLAINTIFF to accept court appointments for parents, children and other parties to juvenile dependency matters. PLAINTIFF commenced work in this capacity on or about July 2, 2020.

116.    On or about July 5, 2018, PLAINTIFF attended her first case conference as a court appointed dependency attorney with the Court, County Counsel and other relevant dependency staff. At these conferences, cases were reviewed to determine status, review procedural posture, facts and other issues relevant to the matter's progression through the dependency process. Clients, family members and other members of the public are not present at case conferences.

117.    On or about July 5, 2018, PLAINTIFF received a final check reimbursing her for travel expenses incurred while employed with the County. The check was received by mail.

118.    On or about July 9, 2018, the Humboldt County Counsel's Office for the first time raised the issue of a conflict regarding PLAINTIFF'S appointment on all juvenile cases. One Deputy Counsel made motions to disqualify PLAINTIFF from all of her cases, including

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

newly filed cases not in existence at the time of her employment with DEFENDANT COUNTY. Another Deputy Counsel filed motions to disqualify PLAINTIFF from all of the cases that existed at the time PLAINTIFF worked for DEFENDANT COUNTY.  Both Deputy Counsels argued that PLAINTIFF had not obtained waivers from the County or her clients, and children and that they cannot consent to a waiver of PLAINTIFF'S alleged conflict.

119.    These motions were made in court in front of PLAINTIFF'S newly appointed clients, family members, court staff, and other dependency staff.  Deputy County Counsel openly discussed PLAINTIFF'S separation from employment with County Counsel in terms that made it clear to everyone present that the separation was involuntary.  Deputy County Counsel argued that PLAINTIFF needed to communicate the conflict to her clients, described the nature of the conflict and demanded that the clients acknowledge the conflict all in open court.  Deputy County Counsel argued that PLAINTIFF and her clients must discuss, describe and acknowledge the conflict on the record.

120.    Their delay in addressing these issues until court was in open session was for the purpose of harming PLAINTIFF'S reputation in the community in which she worked.  Indeed, PLAINTIFF was questioned and provided responses about these issues to her clients.

121.    In addition to the oral motions to disqualify her on the majority of her cases, PLAINTIFF was handed written motions to disqualify her on or about July 10, 2018.

122.    In each motion made, both verbally and in writing, DEFENDANTS accused PLAINTIFF of seeking to represent clients in violation of the California Rules of Professional Conduct.  Each motion accused PLAINTIFF of having a "conflict of interest" and presenting a "clear suggestion of impropriety" through her actions.

123.    No reference was made, in any of the motions to disqualify, that DEFENDANTS had offered to execute a conflict waiver only if PLAINTIFF waived her claims against DEFENDANTS.

124.    On or about July 17, 2018, PLAINTIFF received additional motions to disqualify her filed by DEFENDANT COUNTY.  In one such motion, Katie Baca, Deputy County Counsel stated in her declaration, "The ongoing social worker on this case is Amy Gores.  Ms. Gores has

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

had to work with Ms. Avenmarg as a foster parent and as an attorney for CWS and CWS, on behalf of ms. *(sic)* Gores, strenuously objects to Ms. Avenmarg being appointed for any party in this matter." These statements falsely communicated that PLAINTIFF was somehow deficient as a foster parent and as a Deputy County Counsel representing CWS. The purpose of these statements was to harm PLAINTIFF'S reputation within the community that she worked.

125.    Had PLAINTIFF been disqualified from cases she had been assigned as counsel; it would have meant she would not be paid and would not be able to continue in her contracted position as a court appointed dependency attorney. The further effect of DEFENDANTS' actions was to attempt again to deprive PLAINTIFF from her livelihood.

126.    On or about July 19, 2018, motions to disqualify PLAINTIFF as counsel were consolidated and a contested hearing on the issue took place. DEFENDANT BLANCK represented the County Counsel's Office in the proceeding and argued to disqualify PLAINTIFF on all cases that existed in the office during her employment with the Office. The matter was resolved by the parties prior to ruling. The result was that the County ultimately withdrew its bid to disqualify PLAINTIFF from the cases DEFENDANTS had made motions to disqualify and withdrew these motions.

127.    Nearly a year after DEFENDANT BLANCK withdrew the motions to disqualify counsel, on or about May 17, 2019, PLAINTIFF received a notice from the State Bar of California, stating that they had received a complaint from DEFENDANT BLANCK alleging that she has violated ethical rules.

128.    The complaint accused that she "knowingly created a conflict and continued to operate in spite of the conflict." It failed to state that PLAINTIFF had been approved to foster GN or that GN had lived in her care for approximately two years during the time she served as a Deputy County Counsel.

129.    The State Bar complaint by DEFENDANT BLANCK further alleged that PLAINTIFF'S move from dependency matters to other non-dependency matters was "unsuccessful." This representation was contrary to DEFENDANT BLANCK'S performance evaluations of PLAINTIFF in June of 2017, her promotion in July of 2017 and her last

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

performance evaluation in January of 2018.

130.     PLAINTIFF was required to obtain the services of counsel, disclose private matters relevant to her family and GN and otherwise defend herself in the investigation of the matter.

131.     On or about December 9, 2019, PLAINTIFF received a correspondence from the California State Bar that the ethics complaint had been investigated, that the matter did not warrant further action and that it was closed.

**FIRST CLAIM FOR RELIEF**

**INVASION OF PRIVACY – DECISION MAKING**

**U.S CONSTITUTION, FOURTEENTH AMENDMENT**

**BY PLAINTIFF AGAINST DEFENDANTS**

132.     PLAINTIFF alleges and incorporates by reference paragraphs 1 through 131 of this Second Amended Complaint as if fully set forth herein. PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second amended complaint except those that are inconsistent with a cause of action for invasion of privacy.

133.     Deriving from the Due Process Clause of the Fourteenth Amendment, the freedom to make certain kinds of important decision, including those about family and parenthood, are protected by the right of privacy.

134.     As described above, DEFENDANT BLANCK and DEFENDANT COUNTY intentionally intruded on PLAINTIFF'S privacy by falsely accusing PLAINTIFF of being in violation of her ethical duties as an attorney, due to an alleged conflict of interest arising from PLAINTIFF's efforts to remain involved in the life and care of her former foster child and extended family member.

135.     DEFENDANT BLANCK and DEFENDANT COUNTY further intentionally intruded by requiring PLAINTIFF to choose between rescinding her motion to obtain de facto parental status and visitation of her former foster child and extended family member or cease working with DEFENDANT COUNTY. When PLAINTIFF refused to rescind her motions or

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

voluntarily quit her employment with DEFENDANT COUNTY, DEFENDANT BLANCK and DEFENDANT COUNTY terminated PLAINTIFF'S employment.

136.    DEFENDANTS' false accusations and termination of PLAINTIFF, constitute conduct that would be highly offensive to a reasonable person.

137.    DEFENDANTS' acted with the requisite state of mind to support a violation of PLAINTIFF'S right to privacy as set forth under the Fourteenth Amendment to the United States Constitution.

138.    DEFENDANTS were acting or purporting to act in the performance of DEFENDANTS' official duties and under color of state law.

139.    DEFENDANTS' conduct violated PLAINTIFF's right to privacy.

140.    DEFENDANTS' actions were a substantial factor in causing harm to PLAINTIFF. PLAINTIFF has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to PLAINTIFF'S damage in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

141.    DEFENDANTS BLANCK and DEFENDANT COUNTY directed his subordinates in the acts that deprived PLAINTIFF of her rights.

142.     DEFENDANT BLANCK knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive PLAINTIFF of those rights and DEFENDANT BLANCK failed to act to prevent his subordinates from engaging in such conduct.

143.    DEFENDANT BLANACK engaged in conduct that showed a reckless or callous indifference to the deprivation by himself and his subordinates of the rights of others.

144.    DEFENDANT BLANCK'S conduct was do closely related to the deprivation of PLAINTIFF'S rights as to be the moving force that caused the ultimate injury.

145.    As a direct and proximate result of DEFENDANTS' violation of PLAINTIFF'S Constitutional right to privacy, PLAINTIFF has incurred, and will continue to incur expenses, loss of deferred compensation, loss of equity, benefits, earning capacity, wages, opportunities for employment and advancement, and work experience, all to their damage in an amount according

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**"REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED"**

to proof.

146.    As a further direct and proximate result of DEFENDANTS' invasion of PLAINTIFF'S privacy, PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce her right to privacy with DEFENDANTS, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to PLAINTIFF, and PLAINTIFF is therefore entitled to reasonable attorney's fees and costs of suit as provided by law.

147.    PLAINTIFF is informed and believes and thereon alleges that the conduct of DEFENDANTS was grossly intentional, negligently reckless, willful, wanton, malicious, oppressive and/or unmindful of obligations to PLAINTIFF and/or exhibits that entire want of care which would rise to the presumption of conscious indifference to the consequences so as to warrant the imposition of punitive damages in an amount sufficient to punish, penalize or deter DEFENDANTS and DOES 1-50 for which DEFENDANTS are all liable to PLAINTIFF. DEFENDANTS intentionally personally engaged in such outrageous misconduct as alleged herein.  As a result, PLAINTIFF is entitled to recover punitive damages against said DEFENDANT. While the conduct of DEFENDANT COUNTY was also grossly intentional, negligently reckless, willful, wanton, malicious, oppressive and/or unmindful of obligations to the PLAINTIFF and/or exhibits that entire want of care which would rise to the presumption of conscious indifference to the consequences, PLAINTIFF does not seek punitive damages against DEFENDANT COUNTY, given that punitive damages, by law, are not available against a public entity of the State of California.

**WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS as set forth below.

<u>**SECOND CLAIM FOR RELIEF**</u>

<u>**INVASION OF PRIVACY – DISCLOSURE OF PERSONAL MATTERS**</u>

<u>**U.S CONSTITUTION, FOURTEENTH AMENDMENT**</u>

<u>**BY PLAINTIFF AGAINST DEFENDANTS**</u>

148.    PLAINTIFF alleges and incorporates by reference paragraphs 1 through 147 of this Second Amended Complaint as if fully set forth herein. PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second amended complaint except those that are inconsistent with a cause of action for invasion of privacy.

149.    The Fourteenth Amendment affords individuals a right of privacy in avoiding disclosure of personal matters.

150.    As described above, DEFENDANT BLANCK and DEFENDANT COUNTY intentionally intruded on PLAINTIFF'S privacy by repeatedly requiring that she disclose personal and private matters regarding her family, GN and her employment and subsequent termination.

151.    PLAINTIFF was required to disclose matters related to her motion to obtain de facto parental status and visitation of her former foster child and extended family member, when confronted by DEFENDANT BLANCK.

152.    PLAINTIFF was required to disclose matters regarding her family and her termination from employment in relation to obtaining a new position.

153.    PLAINTIFF was required to disclose matters regarding her family and her termination from employment in defending motions to disqualify her from representing clients in dependency matters.

154.    PLAINTIFF was required to disclose matters regarding her family and her termination from employment in defending herself against a State Bar Complaint initiated by DEFENDANTS.

155.    DEFENDANTS' conduct, constitute conduct that would be highly offensive to a reasonable person.

156.    DEFENDANTS' acted with the requisite state of mind to support a violation of PLAINTIFF'S right to privacy as set forth under the Fourteenth Amendment to the United States Constitution.

157.    DEFENDANTS were acting or purporting to act in the performance of

DEFENDANTS' official duties and under color of state law.

158.    DEFENDANTS' conduct violated PLAINTIFF's right to privacy.

159.    DEFENDANTS' actions were a substantial factor in causing harm to PLAINTIFF. PLAINTIFF has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to PLAINTIFF'S damage in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

160.    DEFENDANTS BLANCK and DEFENDANT COUNTY directed his subordinates in the acts that deprived PLAINTIFF of her rights.

161.     DEFENDANT BLANCK knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive PLAINTIFF of those rights and DEFENDANT BLANCK failed to act to prevent his subordinates from engaging in such conduct.

162.    DEFENDANT BLANACK engaged in conduct that showed a reckless or callous indifference to the deprivation by himself and his subordinates of the rights of others.

163.    DEFENDANT BLANCK'S conduct was do closely related to the deprivation of PLAINTIFF'S rights as to be the moving force that caused the ultimate injury.

164.    As a direct and proximate result of DEFENDANTS' violation of PLAINTIFF'S Constitutional right to privacy, PLAINTIFF has incurred, and will continue to incur expenses, loss of deferred compensation, loss of equity, benefits, earning capacity, wages, opportunities for employment and advancement, and work experience, all to their damage in an amount according to proof.

165.    As a further direct and proximate result of DEFENDANTS' invasion of PLAINTIFF'S privacy, PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce her right to privacy with DEFENDANTS, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to PLAINTIFF, and PLAINTIFF is therefore entitled to reasonable attorney's fees and costs of suit as provided by law.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

166.     PLAINTIFF is informed and believes and thereon alleges that the conduct of DEFENDANTS was grossly intentional, negligently reckless, willful, wanton, malicious, oppressive and/or unmindful of obligations to PLAINTIFF and/or exhibits that entire want of care which would rise to the presumption of conscious indifference to the consequences so as to warrant the imposition of punitive damages in an amount sufficient to punish, penalize or deter DEFENDANTS and DOES 1-50 for which DEFENDANTS are all liable to PLAINTIFF. DEFENDANTS intentionally personally engaged in such outrageous misconduct as alleged herein.  As a result, PLAINTIFF is entitled to recover punitive damages against said DEFENDANT. While the conduct of DEFENDANT COUNTY was also grossly intentional, negligently reckless, willful, wanton, malicious, oppressive and/or unmindful of obligations to the PLAINTIFF and/or exhibits that entire want of care which would rise to the presumption of conscious indifference to the consequences, PLAINTIFF does not seek punitive damages against DEFENDANT COUNTY, given that punitive damages, by law, are not available against a public entity of the State of California.

**WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS as set forth below.

**THIRD CLAIM FOR RELIEF**

**RETALIATION**

**IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871**

**BY PLAINTIFF AGAINST DEFENDANTS**

167.     PLAINTIFF alleges and incorporates by reference paragraphs 1 through 166 of this Second Amended Complaint as if fully set forth herein. PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second amended complaint except those that are inconsistent with a cause of action for retaliation.

168.     At all times relevant to this action, the Civil Rights Act of 1871, 42 U.S.C. § 1983 *et seq,* was in full force and effect. Under 42. U.S.C. § 1983, employees are protected from their

employers, who acting in their official capacities under color of state law, retaliate against them for the exercise of a constitutional right.

169.    PLAINTIFF engaged in constitutionally protected activity by petitioning seek de facto parent status and visitation with her former foster child and extended family member, under her right to privacy as deriving from the Due Process Clause of the Fourteenth Amendment of the U.S Constitution.

170.    In her petitioning the of the juvenile court, PLAINTIFF was seeking to present relevant and material information regarding the welfare of a child in Humboldt County. Although presented in a private matter, PLAINTIFF'S statements to the court nonetheless were a matter of public concern relevant to the physical care and emotional wellbeing of child receiving services from DEFENDANT COUNTY'S agency.

171.    DEFENDANTS wrongfully terminated PLAINTIFF for exercising her constitutionally protected activity.

172.    DEFENDANTS relentlessly filed motions in attempt to disqualify PLAINTIFF as counsel in her juvenile dependency cases after her termination, for PLAINTIFF'S exercise of constitutionally protected activity.

173.    DEFENDANT BLANCK, filed a complaint containing false or inaccurate statements to the California State Bar, accusing PLAINTIFF of violating a conflict of interest, for PLAINTIFF'S exercising of her constitutionally protected activity.

174.    DEFENDANTS BLANCK deprived PLAINTIFFF of her rights under the laws of the United States and the United States Constitution.

175.    DEFENDANT BLANCK was acting in the performance of his official duties as County Counsel, under the color of state law.

176.    DEFENDANT BLANCK had final policymaking authority from DEFENDANT COUNTY concerning legal conflicts.

177.    DEFENDANT COUNTY ratified and approved DEFENDANT BLANCK's actions and actions of the Assistant County Counsel.

178.    DEFENDANT COUNTY was acting under color of state law.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

179.   DEFENDANTS BLANCK and DEFENDANT COUNTY directed his subordinates in the acts that deprived PLAINTIFF of her rights.

180.   DEFENDANT BLANCK knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive PLAINTIFF of those rights and DEFENDANT BLANCK failed to act to prevent his subordinates from engaging in such conduct.

181.   DEFENDANT BLANCK engaged in conduct that showed a reckless or callous indifference to the deprivation by himself and his subordinates of the rights of others.

182.   DEFENDANT BLANCK'S conduct was do closely related to the deprivation of PLAINTIFF'S rights as to be the moving force that caused the ultimate injury.  DEFENDANTS retaliated against PLAINTIFF for engaging in a protected activity.

183.   DEFENDANTS' acts would likely have deterred a person of ordinary firmness from engaging in that protected activity; and

184.   As a direct, foreseeable, and proximate result of DEFENDANTS' actions, PLAINTIFF has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to PLAINTIFF'S damage in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

185.   As a direct and proximate result of DEFENDANTS' and DOES 1-50's retaliation, PLAINTIFF has incurred, and will continue to incur expenses, loss of deferred compensation, loss of equity, benefits, earning capacity, wages, opportunities for employment and advancement, and work experience, all to their damage in an amount according to proof.

186.   As a further direct and proximate result of DEFENDANTS' and DOES 1-50's retaliation, PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce her right to privacy with DEFENDANTS and DOES 1-50, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to PLAINTIFF, and PLAINTIFF is therefore entitled to reasonable attorney's fees and costs of suit as provided by law.

**WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS as set

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

forth below.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF THE CIVIL RIGHTS ACT OF 1871

### U.S CONSTITUTION, FIRST AMENDMENT RIGHT TO PETITION

### BY PLAINTIFF AGAINST ALL DEFENDANTS

187.    PLAINTIFF alleges and incorporates by reference paragraphs 1 through 186 of this Second Amended Complaint as if fully set forth herein. PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second amended complaint except those that are inconsistent with a cause of action for violation of PLAINTIFF'S First Amendment right to petition the courts for redress of grievances.

188.    At all times relevant to this action, the Civil Rights Act of 1871, 42 U.S.C. § 1983 was in full force and effect. Section 1983 creates a cause of action against persons, who acting under color of state law, deprives another of any rights, privileges, or immunities guaranteed under the Constitution.

189.    Under the First Amendment, a public employee has a qualified right to speak on matters of public concern.  The speech at issue was a matter of public concern.  PLAINTIFF spoke as a private citizen and not as part of her official duties as a public employee. PLAINTIFF was engaged in a constitutionally protected activity of speech in petitioning the court.  Further, under the First Amendment to the Unites States Constitution, a citizen has a right to be free from governmental action taken to retaliate against the citizen's free exercise of First Amendment rights or to deter the citizen from exercising those rights in the future.  State action designed to retaliate against, and chill free speech strikes at the very heart of the First Amendment.

190.    DEFENDANTS acted with the requisite culpable state of mind as required by law, in interfering with PLAINTIFF'S First Amendment right to petition the court, as she filed motions for the care of her former foster child and extended family member, matters of public concern.

191.    PLAINTIFF'S speech was a substantial or motivating factor for the adverse

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

employment action taken against her by DEFENDANTS.

192.    DEFENDANT BLANCK was acting in the performance of his official duties as County Counsel, under the color of state law.

193.    DEFENDANT BLANCK and DEFENDANT COUNTY'S conduct violated PLAINTIFF'S right First Amendment Right to petition the courts;

194.    DEFENDANTS did not have an adequate justification for treating PLAINTIFF differently from other members of the general public;

195.    DEFENDANTS would not have taken the adverse employment actions against PLAINTIFF absent the protected speech.  DEFENDANTS' conduct was substantially motivated by a desire to deter or chill PLAINTIFF'S speech.  It is not necessary for PLAINTIFF to demonstrate that her speech was actually inhibited or suppressed.

196.    DEFENDANTS' actions against PLAINTIFF would also chill a person of ordinary firmness from continuing to engage in the protected activity.

197.    DEFENDANTS BLANCK and DEFENDANT COUNTY directed his subordinates in the acts that deprived PLAINTIFF of her rights.

198.     DEFENDANT BLANCK knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive PLAINTIFF of those rights and DEFENDANT BLANCK failed to act to prevent his subordinates from engaging in such conduct.

199.    DEFENDANT BLANCK engaged in conduct that showed a reckless or callous indifference to the deprivation by himself and his subordinates of the rights of others.

200.    DEFENDANT BLANCK'S conduct was do closely related to the deprivation of PLAINTIFF'S rights as to be the moving force that caused the ultimate injury.

201.    As a direct, foreseeable, and proximate result of DEFENDANTS' and DOES 1-50's actions, PLAINTIFF has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to PLAINTIFF'S damage in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

202.    As a direct and proximate result of DEFENDANTS' and DOES 1-50's violation

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

of Plaintiff's First Amendment right to petition, PLAINTIFF has incurred, and will continue to incur expenses, loss of deferred compensation, loss of equity, benefits, earning capacity, wages, opportunities for employment and advancement, and work experience, all to their damage in an amount according to proof.

203.    As a further direct and proximate result of DEFENDANTS' and DOES 1-50's violation of Plaintiff's First Amendment right to petition, PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce her right to privacy with DEFENDANTS and DOES 1-50's, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to PLAINTIFF, and PLAINTIFF is therefore entitled to reasonable attorney's fees and costs of suit, as provided by law.

**WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS as set forth below.

### FOURTH CLAIM FOR RELIEF

### VIOLATION OF THE CIVIL RIGHTS ACT OF 1871

### U.S CONSTITUTION, RIGHT TO FAMILIAL RELATIONS

### BY PLAINTIFF AGAINST ALL DEFENDANTS

204.    PLAINTIFF alleges and incorporates by reference paragraphs 1 through 203 of this Second Amended Complaint as if fully set forth herein. PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second amended complaint except those that are inconsistent with a cause of action for violation of PLAINTIFF'S First and Fourteenth Amendment rights to engage in familial relations.

205.    At all times relevant to this action, the Civil Rights Act of 1871, 42 U.S.C. § 1983 was in full force and effect. Section 1983 creates a cause of action against persons, who acting under color of state law, deprives another of any rights, privileges, or immunities guaranteed under the Constitution.

206.    DEFENDANTS acted with the requisite culpable state of mind as required by law, in interfering with PLAINTIFF'S rights to associate in familial relations under the First Amendment and the Due Process Clause and Equal Protection Clause of the Fourteenth

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Amendment.

207.    DEFENDANT BLANCK was acting in the performance of his official duties as County Counsel, under the color of state law.

208.    DEFENDANT BLANCK'S conduct violated PLAINTIFF'S right First Amendment and Fourteenth Amendment rights to associate in familial relations;

209.    DEFENDANTS BLANCK and DEFENDANT COUNTY directed his subordinates in the acts that deprived PLAINTIFF of her rights.

210.    DEFENDANT BLANCK knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive PLAINTIFF of those rights and DEFENDANT BLANCK failed to act to prevent his subordinates from engaging in such conduct.

211.    DEFENDANT BLANCK engaged in conduct that showed a reckless or callous indifference to the deprivation by himself and his subordinates of the rights of others.

212.    DEFENDANT BLANCK'S conduct was do closely related to the deprivation of PLAINTIFF'S rights as to be the moving force that caused the ultimate injury.

213.    As a direct, foreseeable, and proximate result of DEFENDANTS' actions, PLAINTIFF has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to PLAINTIFF'S damage in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

214.    As a direct and proximate result of DEFENDANTS' and DOES 1-50's violation of Plaintiff's First and Fourteenth Amendment rights to familial relations, PLAINTIFF has incurred, and will continue to incur expenses, loss of deferred compensation, loss of equity, benefits, earning capacity, wages, opportunities for employment and advancement, and work experience, all to their damage in an amount according to proof.

215.    As a further direct and proximate result of DEFENDANTS' violation of Plaintiff's First and Fourteenth Amendment rights to familial relations, PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce her right to privacy with DEFENDANTS, and has thereby incurred, and will continue to incur, legal fees and costs, the

full nature and extent of which are presently unknown to PLAINTIFF, and PLAINTIFF is therefore entitled to reasonable attorney's fees and costs of suit as provided by law.

**WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS as set forth below.

### FIFTH CLAIM FOR RELIEF

### VIOLATION OF THE CIVIL RIGHTS ACT OF 1871

### UNCONSTITUTIONAL GOVERNMENT POLICY

### BY PLAINTIFF AGAINST DEFENDANTS

216.    PLAINTIFF alleges and incorporates by reference paragraphs 1 through 163 of this Second Amended Complaint as if fully set forth herein. PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second amended complaint except those that are inconsistent with a cause of action for violation of PLAINTIFF'S First and Fourteenth Amendment rights to familial association.

217.    At all times relevant to this action, the Civil Rights Act of 1871, 42 U.S.C. § 1983 was in full force and effect. Section 1983 creates a cause of action against local government entities that implement or execute a policy, statement, ordinance, regulation, or official decision, deprives a citizen of their constitutional rights.

218.    DEFENDANT COUNTY had an official policy that prevented Humboldt County Counsel from taking placement of foster children in Humboldt County;

219.    DDEFENDANT COUNTY's policy deprived PLAINTIFF of her rights under the laws of the United States and the United States Constitution.

220.    DEFENDANT BLANCK was an employee/officer of DEFENDANT COUNTY;

221.    DEFENDANT BLANCK acted under the color of state law.

222.    DEFENDANT BLANCK had official policymaking authority from DEFENDANT COUNTY regarding conflicts and DEFENDANTS BLANCK and COUNTY ratified and approved of BLANCK and Assistant County Counsel's actions set forth herein.

223.    DEFENDANT BLANCK acted with the requisite culpable intent as required by law, in implementing or approving DEFENDANT COUNTY'S policy forbidding Humboldt

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

County Counsel from taking placement of foster children in Humboldt County.

224.    DEFENDANT BLANCK's conduct violated PLAINTIFF'S right to familial association as protected under the First Amendment and Fourteenth Amendment Due Process Clause and Equal Protection Clause.

225.    DEFENDANT BLANCK acted because of this official policy.

226.    DEFENDANTS BLANCK and DEFENDANT COUNTY directed his subordinates in the acts that deprived PLAINTIFF of her rights.

227.     DEFENDANT BLANCK knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive PLAINTIFF of those rights and DEFENDANT BLANCK failed to act to prevent his subordinates from engaging in such conduct.

228.    DEFENDANT BLANCK engaged in conduct that showed a reckless or callous indifference to the deprivation by himself and his subordinates of the rights of others.

229.    DEFENDANT BLANCK'S conduct was do closely related to the deprivation of PLAINTIFF'S rights as to be the moving force that caused the ultimate injury.

230.    As a direct, foreseeable, and proximate result of DEFENDANTS' actions, PLAINTIFF has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to PLAINTIFF'S damage in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

231.    As a direct and proximate result of DEFENDANTS' retaliation, PLAINTIFF has incurred, and will continue to incur expenses, loss of deferred compensation, loss of equity, benefits, earning capacity, wages, opportunities for employment and advancement, and work experience, all to their damage in an amount according to proof.

232.    As a further direct and proximate result of DEFENDANTS' and DOES 1-50's retaliation, PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce her right to privacy with DEFENDANTS and DOES 1-50's, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to PLAINTIFF, and PLAINTIFF is therefore entitled to reasonable attorney's fees and

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

costs of suit as provided by law.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS as set forth below.

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF CAL. LABOR CODE § 1102.5(b), (c)
## BY PLAINTIFF AGAINST ALL DEFENDANTS

233.    PLAINTIFF alleges and incorporates by reference paragraphs 1 through 180 of this Second Amended Complaint as if fully set forth herein. PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second amended complaint except those that are inconsistent with a cause of action for violation of PLAINTIFF'S First and Fourteenth Amendment rights to familial association.

234.    At all times herein mentioned, Labor Code §1102.5 was in full force and effect and was binding upon DEFENDANTS and DOES 1-50's.  Said sections require DEFENDANTS and DOES 1-50's to refrain from retaliating against an employee "for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

235.    Said sections also prohibit DEFENDANTS and DOES 1-50 from retaliating "against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

236.    Said sections also clarify that "[a] report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b)."

237.    At all times during PLAINTIFF'S employment with DEFENDANTS and DOES 1-50's, PLAINTIFF performed her duties in a satisfactory fashion as hereto set forth.

238.    PLAINTIFF engaged in a protected activity as defined under Labor Code §1102.5.

239.    DEFENDANTS and DOES 1-50 retaliated against PLAINTIFF after she engaged in a protected activity pursuant to Labor Code §1102.5.

240.    PLAINTIFF is informed and believes that in addition to the practices identified in this Second Amended Complaint, DEFENDANTS and DOES 1-50 have engaged in other retaliatory practices which are not fully known by PLAINTIFF.  The above referenced acts of retaliation are not meant to be exhaustive, but merely exemplary of the kinds of acts of retaliation against PLAINTIFF.

241.    The aforementioned conducts of DEFENDANTS and DOES 1-50 constitutes a continuing violation of PLAINTIFF'S rights from the first act to the latest action.

242.    As a direct, foreseeable, and proximate result of DEFENDANTS' and DOES 1-50's actions, PLAINTIFF has suffered and continues to suffer personal and professional embarrassment and humiliation, mental anguish, emotional distress and discomfort, and injury to reputation. PLAINTIFF'S damages are in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

243.    As a direct and proximate result of DEFENDANTS' and DOES 1-50's unlawful actions as described above, PLAINTIFF has incurred, and will continue to incur medical expenses, loss of benefits, lost wages, opportunities for employment and advancement, and work experience, all to his damage in an amount according to proof at trial.

244.    As a further direct and proximate result of DEFENDANTS' and DOES 1-50's violation of the Labor Code § 1102.5, PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of his employment relationship with

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

DEFENDANTS and DOES 1-50's , and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to PLAINTIFF, and PLAINTIFF is therefore entitled to reasonable attorneys' fees and costs of suit.

245.    **WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS as set forth below.

## SEVENTH CLAIM FOR RELIEF
## INVASION OF PRIVACY
## CALIFORNIA CONSTITUTION, ARTICLE 1, SECTION 1
## (BY PLAINTIFF AGAINST DEFENDANTS)

246.    By reference, PLAINTIFF hereby incorporates paragraphs 1 through 193 of this Second Amended Complaint as if they were set forth within this cause of action.  PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second Amended Complaint, except those that are inconsistent with a cause of action for invasion of privacy.

247.    At all times herein mentioned, California Constitution, Article 1, Sec. I, was in full force and effect and was binding upon DEFENDANTS and DOES 1-50. Under said section the freedom of intimate association, the raising and education of one's children, and cohabitation with relatives are protected rights of privacy, and an employer is not allowed to interfere with those privacy rights.

248.    PLAINTIFF had a reasonable expectation of privacy in making the decision to become more involved in the life of her former foster child and extended family member by filing motions to obtain "de facto status" of the juvenile and for visitation.

249.    As described above, DEFENDANT BLANCK intentionally intruded on PLAINTIFF'S privacy by falsely accusing PLAINTIFF of being in violation of her ethical duties as an attorney, due to an alleged conflict of interest arising from PLAINTIFF's efforts to remain involved in the life and care of her former foster child and extended family member.

250.    DEFENDANT BLANCK further intentionally intruded by requiring PLAINTIFF

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

to choose between rescinding her motion to obtain de facto parental status and visitation of her formal foster child or cease working with DEFENDANT COUNTY. When PLAINTIFF refused to rescind her motions or voluntarily quit her employment with DEFENDANT COUNTY, DEFENDANT BLANCK terminated PLAINTIFF'S employment.

251.   DEFENDANTS' false accusations and termination of PLAINTIFF, constitute conduct that would be highly offensive to a reasonable person.

252.   DEFENDANTS' actions were a substantial factor in causing harm to PLAINTIFF. PLAINTIFF has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to PLAINTIFF'S damage in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

253.   As a direct and proximate result of DEFENDANTS' violation of PLAINTIFF'S Constitutional right to privacy, PLAINTIFF has incurred, and will continue to incur expenses, loss of deferred compensation, loss of equity, benefits, earning capacity, wages, opportunities for employment and advancement, and work experience, all to their damage in an amount according to proof.

254.   As a further direct and proximate result of DEFENDANTS' invasion of PLAINTIFF'S privacy, PLAINTIFF has been compelled to retain the services of counsel in an effort to enforce her right to privacy with DEFENDANTS, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to PLAINTIFF, and PLAINTIFF is therefore entitled to reasonable attorney's fees and costs of suit as provided by law.

255.   PLAINTIFF is informed and believes and thereon alleges that the conduct of DEFENDANTS was grossly intentional, negligently reckless, willful, wanton, malicious, oppressive and/or unmindful of obligations to PLAINTIFF and/or exhibits that entire want of care which would rise to the presumption of conscious indifference to the consequences so as to warrant the imposition of punitive damages in an amount sufficient to punish, penalize or deter DEFENDANTS for which DEFENDANT DOES 1-50 are all liable to PLAINTIFF. DEFENDANTS intentionally personally engaged in such outrageous misconduct as alleged

herein.  As a result, PLAINTIFF is entitled to recover punitive damages against said DEFENDANT. While the conduct of DEFENDANT COUNTY was also grossly intentional, negligently reckless, willful, wanton, malicious, oppressive and/or unmindful of obligations to the PLAINTIFF and/or exhibits that entire want of care which would rise to the presumption of conscious indifference to the consequences, PLAINTIFF does not seek punitive damages against DEFENDANT COUNTY, given that punitive damages, by law, are not available against a public entity of the State of California.

**WHEREFORE**, PLAINTIFF prays for judgment against DEFENDANTS as set forth below.

### EIGHTH CLAIM FOR RELIEF

### DEFAMATION

### CALIFORNIA CIVIL CODE § 43.

### BY PLAINTIFF AGAINST ALL DEFENDANTS

256.    PLAINTIFF alleges and incorporates by reference paragraphs 1 through 203 of this Second Amended Complaint as if fully set forth herein. PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second amended complaint except those that are inconsistent with a cause of action for defamation.

257.    At all times relevant to this action, California Civil Code § 43, *et seq.* were in full force and effect. Section 43 provides that every person has, subject to the qualifications and restrictions provided by law, the right of protection from…defamation, and from injury to his personal relations. Defamation is affected by either of the following: (a) Libel; (b) Slander.

258.    Civil Code Section 44 defines slander as a category of defamation.

259.    Civil Code Section 45 provides: "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

260.    Civil Code Section 46 provides:

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**"REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED"**

Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which:

1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;

2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;

3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;

4. Imputes to him impotence or a want of chastity; or

5. Which, by natural consequence, causes actual damage.

261.    DEFENDANTS and DOES 1-50 made statements set forth above verbally and in writing to persons other than PLAINTIFF.

262.    These persons reasonably understood that the statements were about PLAINTIFF.

263.    The persons reasonably understood the statement(s) to mean that PLAINTIFF was in violation of her ethical duties, as an attorney, regarding conflicts of interests.

264.    These statements impugned PLAINTIFF'S reputation in her profession, and the statements were false.

265.    DEFENDANTS and DOES 1-50 were well aware of the falsity of the statements or had serious doubts about the truth of the statements at the time that the statements were made. DEFENDANTS and DOES 1-50 failed to use reasonable care to determine the truth or falsity of the statement(s).

266.    As a direct and proximate result of DEFENDANTS' and DOES 1-50's unlawful actions as described above, PLAINTIFF has incurred, and will continue to incur loss of employment, training, advancement and promotional opportunities, loss of wages and benefits, medical expenses, all due to this damage in an amount according to proof.

267.    As a direct, foreseeable, and proximate result of DEFENDANTS' and DOES 1-

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

50's actions, PLAINTIFF has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to PLAINTIFF'S damage in amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

268.    As a further direct and proximate result of DEFENDANTS' and DOES 1-50's violation of the Civil Code § 43, et seq., PLAINTIFF has been compelled to retain the services of counsel in an effort to remedy the harm inflicted upon him DEFENDANTS and DOES 1-50, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to PLAINTIFF, and PLAINTIFFS are therefore entitled to reasonable attorneys' fees and costs of suit pursuant to, but not limited by, Cal. Civ. Pro. Sec. 1021.5.

269.    PLAINTIFF is informed and believes and thereon alleges that the conduct of DEFENDANTS and DOES 1-50 was grossly intentional, negligently reckless, willful, wanton, malicious, oppressive and/or unmindful of obligations to PLAINTIFF and/or exhibits that entire want of care which would rise to the presumption of conscious indifference to the consequences so as to warrant the imposition of punitive damages in an amount sufficient to punish, penalize or deter DEFENDANTS and DOES 1-50, for which DEFENDANTS and DOES 1-50 are all liable to PLAINTIFF.

**WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS as set forth below.


**NINTH CLAIM FOR RELIEF**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

**CALIFORNIA COMMON LAW**

**BY PLAINTIFF AGAINST ALL DEFENDANTS**

270.    PLAINTIFF alleges and incorporates by reference paragraphs 1 through 217 of this Second Amended Complaint as if fully set forth herein. PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second amended complaint except those that are inconsistent with a cause of action for intentional

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

interference with contractual relations.

271.    PLAINTIFF had a contract with the Humboldt County Superior Court to represent parents and children in juvenile dependency matters.

272.    DEFENDANTS knew of PLAINTIFF'S contract with the Humboldt County Superior Court.

273.    DEFENDANTS' conduct prevented PLAINTIFF'S performance of the contract or made performance more expensive or difficult.

274.    DEFENDANTS intentionally disrupted PLAINTIFF'S performance of her contract by filing motions to disqualify her from her cases, even brand new cases that did not exist at the time that she worked for DEFENDANT COUNTY.

275.    Furthermore, DEFENDANT has even submitted, a false/inaccurate complaint to the California State Bar, in order to further disrupt PLAINTIFF'S ability to fulfill her contract with the Humboldt Superior Court as a practicing attorney.

276.    As a direct, foreseeable, and proximate result of DEFENDANTS' actions, PLAINTIFF has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to PLAINTIFF'S damage in amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

**WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS as set forth below.


## TENTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (BY PLAINTIFF AGAINST ALL DEFENDANTS)

277.    PLAINTIFF alleges and incorporates by reference Paragraphs 1 through 224 of this Second Amended Complaint as if fully set forth herein. PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second Amended Complaint, except those that are inconsistent with a cause of action for intentional infliction of emotional distress.

278.   The conduct set forth herein above by DEFENDANTS and DOES 1-50 was extreme and outrageous. Said conduct was intended to cause and did cause severe emotional distress or was done in conscious disregard of the probability of causing such distress.

279.   As a proximate result of said conduct, PLAINTIFF has suffered and continues to suffer discomfort anxiety, humiliation and emotional distress, and will continue to suffer serious emotional distress in the future in an amount according to proof.

280.   PLAINTIFF informed and believes that the wrongful acts and/or conduct alleged herein which was perpetrated by DEFENDANTS and DOES 1-50 was done maliciously, oppressively, and/or fraudulently and with a wrongful intent of harming and injuring PLAINTIFF and did in fact harm PLAINTIFF with an improper and evil motive amounting to malice and in conscious disregard of PLAINTIFF'S rights. As a result, PLAINTIFF is entitled to recover punitive damages against said DEFENDANT. While the conduct of DEFENDANT DEPUTY COUNTY was also grossly intentional, negligently reckless, willful, wanton, malicious, oppressive and/or unmindful of obligations to the PLAINTIFF and/or exhibits that entire want of care which would rise to the presumption of conscious indifference to the consequences, PLAINTIFF does not seek punitive damages against DEFENDANT COUNTY, given that punitive damages, by law, are not available against a public entity of the State of California.

**WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS as set forth below.

## ELEVENTH CLAIM FOR RELIEF
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (BY PLAINTIFF AGAINST ALL DEFENDANTS)

281.   PLAINTIFF alleges and incorporates by reference Paragraphs 1 through 228 of this Second Amended Complaint as if fully set forth herein. PLAINTIFF also incorporates into this cause of action each and every allegation set forth in every paragraph of this Second

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Amended Complaint, except those that are inconsistent with a cause of action for negligent infliction of emotional distress.

282.     By engaging in the conduct set forth herein, DEFENDANTS and DEFENDANT DOES 1-50 have negligently breached their duty of care not to engage in the conduct alleged. PLAINTIFF asserts this cause of action against DEFENDANT COUNTY based on vicarious liability, not direct liability.

283.     PLAINTIFF has suffered and continues to suffer discomfort, anxiety, humiliation and emotional distress, and will continue to suffer serious emotional distress in the future in an amount according to proof.

284.     DEFENDANTS' negligence was a substantial factor in causing PLAINTIFF'S serious emotional distress.

285.     PLAINTIFF is informed and believes that the wrongful acts and/or conduct alleged herein which was perpetrated by all DEFENDANTS and DEFENDANT DOES 1-50 was done maliciously, oppressively, and/or fraudulently and with a wrongful intent of harming and injuring PLAINTIFF and did in fact harm PLAINTIFF with an improper and evil motive amounting to malice and in conscious disregard of PLAINTIFF'S rights.  As a result, PLAINTIFF is entitled to recover punitive damages against said DEFENDANT. While the conduct of DEFENDANT COUNTY was also grossly intentional, negligently reckless, willful, wanton, malicious, oppressive and/or unmindful of obligations to the PLAINTIFF and/or exhibits that entire want of care which would rise to the presumption of conscious indifference to the consequences, PLAINTIFF does not seek punitive damages against DEFENDANT COUNTY, given that punitive damages, by law, are not available against a public entity of the State of California.

**WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS as set forth below.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## **PRAYER FOR RELIEF**

**WHEREFORE,** PLAINTIFF demands judgment against all DEFENDANTS as follows:

a.      That process be issued and served as provided by law, requiring DEFENDANTS to appear and answer or face judgment;

b.      That PLAINTIFF has and recovers a judgment against DEFENDANTS in an amount to be determined at trial as general, special, actual, compensatory and/or nominal damages;

c.      That PLAINTIFF has and recovers a judgment against DEFENDANTS and Does 1-50 for punitive and/or exemplary damages in an amount to be determined at trial sufficient to punish, penalize and/or deter DEFENDANTS and Does 1-50, as allowable by law;

d.      That PLAINTIFF has and recovers a judgment against DEFENDANTS for civil penalties in an amount to be determined at trial.

e.      That PLAINTIFF has and recovers a judgment against DEFENDANTS in an amount to be determined at trial for expenses of this litigation, including, but not limited to, reasonable attorneys' fees, costs and expert fees and expenses;

f.      That PLAINTIFF has and recovers a judgment against DEFENDANTS enjoining DEFENDANTS from engaging in each of the unlawful practices set forth in this Second Amended Complaint;

g.      That PLAINTIFF obtains injunctive relief;

h.      That PLAINTIFF recovers pre-judgment and post-judgment interest; and

i.      That PLAINTIFF has such other relief as this Court deems just and appropriate.

j.      And any other relief as allowed by law.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated: May 29, 2020                         Respectfully submitted,

                                            STEWART & MUSELL, LLP

                                            /s/ electronic signature authorized

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

_____
Elisa J. Stewart
Attorney

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL